**WATSON BROS. TRANSPORTATION CO., Inc., Omaha, Nebraska, Plaintiff,**

v.

**The UNITED STATES of America, and The Interstate Commerce Commission, Defendants.**

**Civ. No. 52–54.**

United States District Court
D. Nebraska, Omaha Division.

June 23, 1955.

Joseph T. Votava, Loyal G. Kaplan, Omaha, Neb., Beverley S. Simms, Washington, D. C., for plaintiff.

Leo H. Pou, Interstate Commerce Commission, Washington, D. C., and James H. Durkin, Dept. of Justice, Washington, D. C., for defendants.

Before WOODROUGH and JOHNSEN, Circuit Judges, and DONOHOE, Chief Judge.

DONOHOE, Chief Judge.

This is an action to set aside and annul an order of the Interstate Commerce

Commission and to enjoin issuance pursuant thereto of a "corrected" Certificate of Public Convenience and Necessity to Plaintiff. This court has jurisdiction, 28 U.S.C. (1952 Ed.) §§ 1336, 1398; and, as required, a three-judge court has been appropriately convened to determine the matter, 28 U.S.C. (1952 Ed.) §§ 2321, 2325, 2284.

The salient facts are neither complex, nor disputed. Plaintiff, Watson Bros. Transportation Co., is engaged in the interstate transportation of freight by motor carrier; and prior to the year 1947 had been granted various operating rights by the Interstate Commerce Commission. On December 22, 1947, these rights were consolidated in a single Certificate of Public Convenience and Necessity issued by the Commission. This certificate authorized plaintiff to engage in the transportation of general commodities on approximately eighty-four separate routes. On sixty-nine of these routes, the grant of authority to transport general commodities included the right to transport explosives. On fifteen of these routes, however, plaintiff was not authorized to transport dangerous explosives.

On September 30, 1947, plaintiff filed an application with the Commission for a Certificate of Public Convenience and Necessity authorizing the transportation of explosives on "all the routes" over which plaintiff was authorized to haul general commodities. An amendment expressly designating the routes over which plaintiff sought authority to transport explosives was subsequently filed. A hearing was held upon the application, as amended, in Omaha, Nebraska, on February 3, 1949; and during the course of the hearing it developed from the testimony of a witness for the Department of the Army that there was no motor carrier service at the following installations: Rocky Mountain Arsenal, near Denver, Colorado; Iowa Ordnance Plant, near Burlington, Iowa; Sunflower Ordnance Plant, near DeSoto, Kansas; and Savanna Ordnance Plant, near Savanna, Illinois. Consequently plaintiff requested orally at the hearing permission to amend its application so that it would include a request for authority to serve these four points.

The record shows:

"Mr. Kaplan (for Watson Bros.): If the Examiner please—Mr. Buster, if you will excuse me—prior to presenting intervener's case the applicant at this time requests permission to amend its application in conformity with the proof that has been offered, and it is suggested by this counsel that such amendment will not substantially broaden the scope of this application.

"This applicant is not authorized to serve the Iowa Ordnance Plant, the Sunflower Ordnance Plant, the Savanna Ordnance Depot and the Rocky Mountain Arsenal. The Iowa Ordnance Plant is located approximately six miles west of Burlington, Iowa. This applicant is authorized to operate over U. S. Highway 34, which is less than six miles from the Iowa Ordnance Plant.

"The Sunflower Ordnance Plant at DeSoto, Kansas, is less than 10 miles south of U. S. Highway 40 over which route the applicant is authorized to serve.

"The Savanna Ordnance Depot is some several miles, and this counsel does not know how many miles, from Freeport, Illinois, which is authorized to this applicant.

"In addition, the Rocky Mountain Arsenal is only two miles from Denver, Colorado. With that explanation, applicant respectfully moves permission to amend its application so as to be able to serve to and from the Iowa Ordnance Plant near Burlington, Iowa; the Sunflower Ordnance Plant near DeSoto, Kansas; the Savanna Ordnance Depot near Savanna, Illinois, and the Rocky Mountain Arsenal near Denver, Colorado.

"Exam. Garofalo: That is the Rocky Mountain Arsenal?

"Mr. Kaplan: Yes, sir.

"Exam. Garofalo: Are there any objections?

"Mr. Buster (for intervener): If counsel is agreeable to restricting the authority sought to service for the United States Government there is no objection. I reason I raise that question is for tack-on purposes.

"Mr. Kaplan: That stipulation will be quite agreeable. We certainly join in it.

"Mr. Buster: No objection.

"Exam. Garofalo: If there are no further objections, the amendment is allowed."

On April 13, 1949, the trial examiner filed his recommended report and order which contains the following finding:

"The examiner finds that the present and future public convenience and necessity require operation by applicant as a common carrier by motor vehicle, in interstate or foreign commerce, of dangerous explosives to, from, or between points over the regular routes and irregular routes as shown in the appendix hereto, and to and from the sites of the Rocky Mountain Arsenal, near Denver, Colo., Iowa Ordnance Plant, near Burlington, Iowa, Sunflower Ordnance Plant, near DeSoto, Kans., and Savanna Ordnance Plant, near Savanna, Ill., as off route points in connection with applicant's otherwise authorized operations.

"The examiner further finds that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and the Commission's Rules and Regulations thereunder; and that an appropriate certificate should be issued."

Plaintiff was served a copy of the examiner's recommended report and order on April 15, 1949. No exceptions to this recommended report and order were taken and on May 18, 1949, the time for taking exceptions expired, and the order of the examiner became effective as the order of the Commission.

On July 19, 1949, the Commission issued to plaintiff a Certificate of Public Convenience and Necessity containing the following material provisions:

"After due investigation, It appearing that the above-named carrier has complied with all applicable provisions of the Interstate Commerce Act, and the requirements, rules and regulations prescribed thereunder, and, therefore, is entitled to receive authority from this Commission to engage in transportation in interstate or foreign commerce as a motor carrier; and the Commission so finding;

"It is ordered, That the said carrier be, and it is hereby, granted this Certificate of Public Convenience and Necessity as evidence of the authority of the holder to engage in transportation in interstate or foreign commerce as a common carrier by motor vehicle; subject, however, to such terms, conditions, and limitations as are now, or may hereafter be, attached to the exercise of the privileges herein granted to the said carrier.

"It is further ordered, That the transportation service to be performed by the said carrier in interstate or foreign commerce shall be as specified below:

\* \* \*

"*General commodities,* except household goods as defined in *Practices of Motor Common Carriers of Household Goods,* 17 M.C.C. 467, and commodities requiring special equipment

\* \* \*

"Service is authorized to and from the site of the Rocky Mountain Arsenal, near Denver, Colo., Iowa Ordnance Plant, near Burlington, Iowa, Sunflower Ordnance Plant, near DeSoto, Kans., and Savanna Ordnance Plant, near Savanna, Ill.,

as off-route points in connection with said carrier's authorized regular and irregular route operations.

"It is further ordered, and is made a condition of this certificate that the holder thereof shall render reasonably continuous and adequate service to the public in pursuance of the authority herein granted, and that failure so to do shall constitute sufficient grounds for suspension, change, or revocation of this certificate."

After the issuance of this Certificate of Public Convenience and Necessity plaintiff expended substantial sums of money for equipment to be used in rendering the service required by the before-quoted paragraphs of the Certificate; and plaintiff has continuously from the time of the issuance of the certificate to the present time engaged in the transportation of general commodities to the four ordnance plants covered by the certificate issued July 19, 1949.

On August 25, 1953, the Commission sua sponte issued the following order relating to plaintiff's certificate:

"Order

IM–141–H

"At a Session of the Interstate Commerce Commission, Division 5, held at its office in Washington, D. C., on the 25th day of August, A. D. 1953

No. MC 70451

Watson Bros. Transportation Co., Inc.,

Omaha, Nebraska

"Upon further consideration of the record in the above-entitled proceeding;

"*It appearing,* That the corrected report and recommended order of April 13, 1949, which became effective May 18, 1949, in No. MC 70451 Sub 72, authorized the issuance of a certificate for the transportation of *dangerous explosives* (Now designated Class A and B explosives) 'to and from the sites of the Rocky Mountain Arsenal, near Denver Colo., Iowa Ordnance Plant,

near Burlington, Iowa, Sunflower Ordnance Plant, near DeSoto, Kans., and Savanna Ordnance Plant, near Savanna, Ill., in connection with applicant's otherwise authorized operations'.

"*It further appearing,* That pursuant to said report and order of May 18, 1949, the above-described authority was consolidated with other authority specified in Certificate No. MC 70451 issued December 22, 1947, and that thru inadvertence such authority was shown as a service clause in connection with the operation set forth below:

"*General commodities,* except household goods as defined in *Practices of Motor Common Carriers of Household Goods,* 17 M.C.C. 467, commodities in bulk, and commodities requiring special equipment, over irregular routes,

"Between Minneapolis, St. Paul, South St. Paul, Ivergrove, West St. Paul, Newport, North St. Paul, Columbia Heights, Robbinsdale, St. Louis Park, Hopkins, Edina, Richfield, Red Rock, McCarron's Lake, Fort Snelling, and State Fair Grounds, Minn.

"Service is authorized to and from the site of the Rocky Mountain Arsenal, near Denver, Colo., Iowa Ordnance Plant, near Burlington, Iowa, Sunflower Ordnance Plant, near DeSoto, Kans., and Savanna Ordnance Plant, near Savanna, Ill., as off-route points in connection with said carrier's authorized regular and irregular route operations.

"*And it further appearing,* That such authority should have been set forth as a general service clause as follows:

"*Class A and B explosives,*

"Service is authorized to and from the off-route points of the sites of the Rocky Mountain Arsenal, near Denver, Colo., Iowa Ordnance Plant, near Burlington, Iowa, Sunflower Ordnance Plant, near DeSoto, Kans.,

and Savanna Ordnance Plant, near Savanna, Ill., in connection with carrier's otherwise authorized regular route operations.

and good cause appearing therefor:

"*It is ordered,* That a corrected certificate be issued Watson Bros. Transportation Co., Inc., in No. MC 70451 and that such authority therein be set forth as outlined above.

"*It is further ordered,* That in all other respects the said Certificate No. MC 70451, issued July 19, 1949, shall remain in full force and effect.

"*And it is further ordered,* That this order shall become effective on October 5, 1953, unless prior thereto it is otherwise ordered.

"By the Commission, division 5.
"George W. Laird,
"(SEAL)            Acting Secretary."

On January 4, 1954, plaintiff filed a petition with the Commission for indefinite postponement and for reconsideration, and to vacate and set aside the Commission's order of August 25, 1953. On June 7, 1954, the Commission entered an order denying the relief requested and plaintiff, on July 1, 1954, filed its complaint in this court seeking an order setting aside and declaring void the order of August 25, 1953, and enjoining the issuance of the proposed "corrected" certificate.

## Discussion

The order under attack purports to effectuate a change in an existing Certificate of Public Convenience and Necessity issued by the Commission to Watson Bros. The only statutory authority for the suspension, change or revocation of such a certificate by the Commission is contained in Section 212(a), Part II, of the Interstate Commerce Act, 49 U.S. C.A. § 312(a). The pertinent portion of this section reads as follows:

"Certificates * * * shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate * * * may upon complaint, or on the Commission's own initiative, after notice and hearing, be suspended, changed or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission promulgated thereunder * * *."

The Certificate issued July 19, 1949, granted plaintiff authority to transport "general commodities" to and from four designated ordnance plants. The order of August 25, 1953, restricts this authority to the transportation of Class "A" and "B" explosives. Since the latter order was issued without notice and hearing and for reasons other than those stated in Section 212(a), it is invalid.

Counsel for the Commission argues that the order of August 25, 1953, merely corrects a clerical error in the certificate of July 19, 1949. Even if the court were to assume that the Commission has authority to correct clerical errors without notice and hearing, the result in this case would not be different, because it is the holding of the court that the order of August 25, 1953, is more than the mere correction of a clerical error; and is an attempt made contrary to Section 212 to revoke and change a certificate duly issued.

The court finds that the plaintiff will suffer great loss and damage by the threatened order for which it has no adequate remedy except by injunction.

For the reasons stated, an injunction should issue. Counsel for the plaintiff shall prepare and submit for approval the appropriate order to be entered in keeping with this memorandum.

JOHNSEN, Circuit Judge (dissenting).

The effect of the majority opinion is to hold that, where the Commission has defined the scope of public convenience and necessity existing in a particular situation, by a finding such as the statute requires, but it has in some manner is-

sued a certificate in excess of or contrary to the limits of the public convenience and necessity so found, it can not call in the certificate or engage in any correction or reissuance thereof, in order to make the certificate conform to its finding, unless it grants the holder a hearing.

I respectfully dissent from this view, for the reasons (1) that I do not believe that there is any statutory prescription for a hearing as to such an unauthorized, purported certificate-grant, and (2) that I am unable to see how it legally can be claimed that any substance or any color of rights exists, to whatever operations the certificate may purport to cover which plainly are beyond or contradictory of the scope or limits of the public convenience and necessity found, as a basis or foundation for any contention of requirement or need for a hearing generally.

What is there that the holder could possibly contend or argue in such a situation, as a matter of hearing accorded, that would at all enable the language of a certificate legally to override and nullify the scope of the public convenience and necessity fixed by the finding, which the statute makes requisite to the very issuance of the certificate?

Under 49 U.S.C.A. § 307, the Commission has power or authority to issue a certificate of public convenience and necessity for motor carrier operation (except as to grandfather rights under § 306(a)), only *"if it is found * * * that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity * * *."* (Emphasis mine.)

The plain effect of this statutory requirement seems to me to be that any purported certificate or part of a certificate, which has been issued without such a finding as a basis for it, is legally void, as not being capable of constituting an exercise of Commission authority or a grant of operator rights under the statute.

In the situation before us, the finding of public convenience and necessity made as to operations by Watson Bros. to and from the four ordnance plants that are involved was as to the hauling "of dangerous explosives." There was no finding of public convenience and necessity as to the hauling of any other commodities, as a basis for granting any additional hauling rights. Watson Bros. acceded to the limits of the convenience and necessity found, by not taking any exceptions to or making other legal attack upon the finding, and the Commission in regular course directed the issuance of a certificate in effectuation of its finding.

The certificate, as drawn, however, recited that "Service is authorized to and from the site of (each of the four ordnance plants involved) as off route points in connection with said carrier's authorized regular and irregular route operations." The words, "of dangerous explosives," were in some way not included in the recitation of the certificate, and Watson Bros., without any inquiry of the Commission as to the obvious discrepancy between the finding and the certificate, and perhaps with no desire to make any such inquiry, began to engage in the operation of transporting general commodities, and not just dangerous explosives, to and from the ordnance plants.

What then, as a matter of fair and necessary administrative reach, was the Commission entitled to do, when it discovered what had occurred in relation to the issuance and the use of its certificate? If I am correct in my view that a certificate or any part of a certificate that purports to grant operation rights, for which there exists no finding of public convenience and necessity, is legally void, then there can not possibly be any basis for a carrier to object to, argue legal prejudice from, or seek to prevent, any attempt by the Commission, in eliminating shadows for enforcement purposes, to call in such a certificate for correction or reissuance, or to make a declaration of nullity, or to enter an order against the carrier, or to take any other

incidental administrative step, the sole purpose and the only effect of which action are a conforming of the language of the certificate to the actual scope of the existing finding, on which alone, as I have stated, the right of the Commission to issue the certificate rested.

I am unable to agree with the contention of Watson Bros., which the majority here accepts, that the Commission has no right to undertake to make an *improperly* issued certificate conform to the scope of the finding of public convenience and necessity made and required to underlie the certificate, except upon the basis of 49 U.S.C.A. § 312(a). That section provides: "Certificates * * * shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate * * * may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may upon complaint, or on the Commission's own initiative, after notice and hearing, be suspended, changed or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission, promulgated thereunder, or with any term, condition, or limitation of such certificate * * *."

It will be noted that this statutory provision gives the Commission the right to touch certificates only in relation to some willful violation of statute, of lawful orders, rules, or regulations of the Commission, or of terms, conditions, or limitations of the certificate—all of which, as the word "willful" manifestly implies, are matters of conduct in the holder's operations. If this provision is the measure or limit of the Commission's right to deal with legally unauthorized certificates, then necessarily the Commission is unable at all, just as in the case of authorized certificates, to touch any such certificates or the operations being carried on under them, so long as the holder refrains from engaging in a willful violation of any statute, of any lawful order, rule, or regulation of the Commission, or of any term, condition, or limitation of his purported certificate, in the carrying on of operations under the certificate.

In other words,—and this is in fact the effect of Watson Bros.' argument here— if an unempowered or unauthorized certificate or part of a certificate chances to be issued by the Commission, with no finding of public convenience and necessity as a basis for its issuance, the whole thing is simply too bad for everybody (except the certificate holder), including the public interest which the Act was designed to serve, because 49 U.S.C.A. § 312(a), even on a hearing, does not allow the Commission to touch any certificate, whether lawfully or unlawfully issued, unless the holder, in carrying on his carrier operations under the authority of the certificate, engages in some willful conduct of violation of statute, commission regulation, or certificate terms, as previously mentioned, in the mode of his operation.

I reject that construction of § 312(a), as being both unreasonable and unnecessary. Having regard for the possible consequences of such a construction upon the public interest in relation to unauthorized certificates, and keeping in mind that rights to operate as a motor carrier can not at all be granted or have validity under § 307, supra, except upon the basis of public convenience and necessity having been found, it seems to me that § 312(a) logically has and reasonably can have application only to certificates which the Commission has lawfully issued, and not to purported certificates or parts of certificates which the Commission possesses no power or authority under § 307 to issue. I am further persuaded to this view, because that which has no legal substance or existence, from the lack of any power to create it, would hardly have capacity or need to be "suspended, changed, or revoked," in a legal sense or as a question of legal effect.

With § 312(a) not being required to be regarded as having application to legally unauthorized certificates, there is no

prescription otherwise in the statutes that requires the Commission to grant a hearing as a basis for the taking of administrative action by it to make the certificate here involved simply conform to the finding of public convenience and necessity existing in relation to it. And, as I have said, in view of § 307, it is not possible to contend that such an unauthorized certificate can give rise to any substance or color of legal rights to operate, which, apart from any statutory prescription for hearing, would entitle Watson Bros. to a hearing as a matter of general procedural due process. Nor can Watson Bros. seek to induce relief here on the basis and scope of the unlawful operations which they have been carrying on in the past and the present existence of public convenience and necessity which those operations may perhaps be capable of demonstrating. These are matters that are only open to consideration on a new application before the Commission for a certificate of public convenience and necessity as to general commodities, and not as a matter of any possible legal relationship to the finding of public convenience and necessity previously made and the certificate entitled to be issued on the basis thereof.

I am accordingly unable to see any basis for the granting of an injunction allowing Watson Bros. to continue to haul general commodities to and from the ordnance plants involved. All that Watson Bros. can have or ever have had any lawful right to haul, under the finding of public convenience and necessity made by the Commission, is "dangerous explosives."

Other contentions in relation to the Commission's action as to the certificate have been made by Watson Bros., which the majority opinion does not reach. I shall accordingly not consider them either. They go entirely to the matter of hauling explosives and have no relationship to the question of the right of the Commission to keep Watson Bros. from continuing to haul general commodities as opposed to dangerous explosives. To me, the Commission clearly had the right to correct the certificate issued Watson Bros., to exclude general commodities from the recital of their operation rights and to leave those operation rights applicable to dangerous explosives only, in accordance with the finding of public convenience and necessity made and in relation to the power or authority of the Commission to issue a certificate only on the basis of that finding. To hold otherwise is to hamper the Commission in the performance of its busy functions, by requiring it to conduct a useless hearing in relation to something that is utterly without any possible substance or color as a basis of legal operating rights.