FRISCO TRANSPORTATION COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission et al., Defendants.

No. 10272(1).

United States District Court
E. D. Missouri, E. D.
June 28, 1957.

John E. McCullough, Ernest D. Grinnell, Jr., A. J. Baumann, St. Louis, Mo., for plaintiff, Frisco Transp. Co., a corporation.

Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Mo., and Maurice A. Fitzgerald, Atty., Dept. of Justice, Washington, D. C., for United States of America, defendant.

C. H. Johns, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., and Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Mo., for Interstate Commerce Commission, defendant.

B. W. LaTourette, St. Louis, Mo., for Viking Freight Co., Be-Mac Transp. Co., C. E. S. Truck Lines and L. A. Tucker Truck Lines, intervenors.

Peter T. Beardsley, Washington, D. C., for American Trucking Ass'n, Inc., and its Regular Common Carrier Conference, intervenors.

Carroll J. Donohue, St. Louis, Mo., and James L. Highsaw, Washington, D. C., for Railway Labor Executives Ass'n, intervenors.

Wentworth E. Griffin, Kansas City, Mo., for Campbell "66" Express, intervenor.

Before VAN OOSTERHOUT, Circuit Judge, and HARPER and MOORE, District Judges.

HARPER, Judge.

This is an action by the Frisco Transportation Company, a wholly owned subsidiary of the St. Louis-San Francisco Railway Company, to enjoin, set aside, suspend and annul an order of the Interstate Commerce Commission entered on December 7, 1953, which order purports to cancel certain certificates, and at the same time new or amended certificates would be issued.

This court has jurisdiction of the subject matter of this action, 28 U.S.C.A. § 1336, and the case was heard by a court composed of three judges pursuant to Sections 2321–2325, 28 U.S.C.A.

At issue in this proceeding is the propriety of the cancellation and re-issue in restricted form of five operating certificates authorizing motor carrier operation by plaintiff in areas adjacent to those served by the Frisco Railroad. The Commission contends that four of these certificates issued in the year 1942 were incomplete in form in that they failed to include, due to a clerical error, a reservation of the power to restrict the operations of plaintiff by imposing limitations designed to insure that plaintiff's motor carrier service would be auxiliary and supplemental to the parent company's rail service, the necessity and propriety of such reservations of power having been determined in the finance hearings conducted when plaintiff sought to purchase truck routes from those then operating them. Plaintiff denies that such certificates were in fact issued with an inadvertent omission of the reservation of power previously determined necessary, and asserts further that, even should this be the case, the Commission is without power to correct them at this time, its power in this respect being limited by Sec. 212(a) of the Interstate Commerce Act, 49 U.S.C.A. § 312(a).

With respect to the fifth certificate (Bennett), the plaintiff asserts that the Commission is without power to restrict its operation.

■ Under consideration in the original hearings of 1938 and 1939 and in the re-opened Commission proceedings beginning in 1945, which resulted in this action being brought, were six truck routes identified before us by the name of the vendor from whom purchase was authorized. These are the "Cooper" route from Joplin, Missouri, to Carthage, Missouri; the "Hamm" route from Joplin, Missouri, to Miami, Oklahoma; the "Tolson" route from Walnut Ridge, Arkansas, to Memphis, Tennessee; the "Parker" route from Blytheville, Arkansas, to Memphis, Tennessee; the "Rose" route from Hugo, Oklahoma, to Paris, Texas; and the "Bennett" route from Blytheville, Arkansas, to Lake City, Arkansas. In its reconsideration of the "Rose" certificate the Commission ordered no change. The operating certificate for the "Bennett" route was issued in 1940 with the recital of a reservation of power to impose additional restrictions on the scope of activities permitted under the certificate, and hence, under the rule of United States v. Rock Island Motor Transit Co., 340 U.S. 419, 71 S.Ct. 382, 95 L.Ed. 391, rehearing denied 341 U.S. 906, 71 S.Ct. 609, 95 L.Ed. 1344, there can be little question of the power of the Commission to impose the restrictions which it has incorporated in the amended Bennett certificate. These restrictions are as follows:

"1. The service to be performed by the Frisco Transportation Company, hereinafter called the Transportation Company, shall be limited to service which is auxiliary to, or supplemental of, the train service of the St. Louis-San Francisco Railway Company, hereinafter called the Railway, except that this condition shall not apply with respect to Dyess, Ark.

"2. The Transportation Company shall not render any service to or from any point not a station on a rail line of the railway, except that this condition shall not apply with respect to Dyess, Ark.

"3. No shipments shall be transported by the Transportation Company between any of the following points, or through, or to, or from more than one of said points: Kansas City, Springfield, Joplin, St. Louis, Willow Springs, Cape Girardeau-Jackson-Chaffee (considered as one), Mo., Tulsa, Okla., Blytheville, Ark., Memphis, Tenn., and Amery-Tupelo (considered as one), Miss.

"4. All contractual arrangements between the Transportation Company and the Railway shall be reported to the Commission and shall

be subject to revision if and as it finds necessary in order that such arrangements shall be fair and equitable to the parties.

"5. Such further specific conditions as in the future the Commission may find necessary to impose in order to insure that the service shall be auxiliary to, or supplemental of, the train service of the railway."

Determination of the propriety of the change made in the four remaining certificates requires a somewhat more detailed examination of the administrative history of the certificates which plaintiff seeks to retain unaltered. In 1938 and 1939, finance hearings were held by an examiner for the Commission with regard to the acquisition of truck routes by plaintiff, organized in 1937, to provide co-ordinated rail-motor carrier service. After the finance hearings on these four acquisitions the examiner made his report approving acquisition by plaintiff of the routes, but in each case concluded his report with the following language:

"* * * Provided, however, that the authority herein granted is subject to such further limitations or restrictions as the Commission may hereinafter find it necessary to impose in order to insure that the service shall be auxiliary or supplementary to the train service of the said Railway Company and shall not unduly restrain competition.

Following the finance hearings, Division 5 of the Interstate Commerce Commission approved and adopted the report of the Hearing Examiner, with one commissioner dissenting. Following the action by Division 5 of the Commission, the plaintiff completed the purchase, and operations were commenced by the plaintiff in early 1939, and have continued without change as to the nature of or without interruption to the present time.

Thereafter, in June and July of 1939, compliance orders were issued by Division 5 of the Commission with respect to the four routes in question. The compliance orders do not contain the limitations contained in the findings in each of the finance proceedings. In 1942, certificates were issued by the Commission to the plaintiff with respect to each of the four routes, which certificates do not contain the limitations contained in the findings in each of the finance proceedings.

In July, 1941, before the issuance of the certificates under consideration, competing motor carriers filed complaints with the Commission alleging that plaintiff was operating a motor carrier service independent of parent Railway's rail service and in contravention of the condition imposed by the Commission in the finance hearings. Proceedings were had by the Commission to inquire into these complaints, and the Commission in 1946 concluded that plaintiff was not operating in violation of the terms of its certificates. The Commission indicated, however, that the ruling should not be taken as sanctioning such operation, since the proceedings pursuant to which the certificates in question were issued to the plaintiff had in fact already been re-opened for further hearing. The Commission had started these hearings in 1945, in Division 5, and Division 5 held that the operating certificates had been issued with an inadvertent omission of the proviso set out in the report of the finance hearings, and directed the cancellation and re-issue of the certificates.

Upon a petition for reconsideration presented to the full Commission, the matter was reheard by it in November, 1952. A report of the Commission issued in December, 1953, upheld the action of Division 5 in incorporating the restrictions in the operating certificates, in a divided opinion, four commissioners dissenting and one not participating. A petition for reconsideration was denied by the Commission in April, 1955, and this action was commenced a month later.

A three-judge court, in Watson Bros. Transportation Co. v. U. S., D.C., 132 F.Supp. 905, loc. cit. 909, affirmed 350 U.S. 927, 76 S.Ct. 302, 100 L.Ed. 810, said:

"Counsel for the Commission argues that the order of August 25, 1953, merely corrects a clerical error in the certificate of July 19, 1949. Even if the court were to assume that the Commission has authority to correct clerical errors without notice and hearing, the result in this case would not be different, because it is the holding of the court that the order of August 25, 1953, is more than the mere correction of a clerical error; and is an attempt made contrary to Section 212 to revoke and change a certificate duly issued.

The court in the above language clearly indicates that certificates duly issued cannot be modified in the manner sought to be modified in the case before us, even though some prior report of the Commission indicates to the contrary. This is clearly borne out by the dissenting opinion of Judge Johnsen in that case, wherein he said, 132 F.Supp. loc. cit. 909–910:

"The effect of the majority opinion is to hold that, where the Commission has defined the scope of public convenience and necessity existing in a particular situation, by a finding such as the statute requires, but it has in some manner issued a certificate in excess of or contrary to the limits of the public convenience and necessity so found, it can not call in the certificate or engage in any correction or reissuance thereof, in order to make the certificate conform to its finding, unless it grants the holder a hearing."

The case before us with respect to the four certificates in question is a much stronger case on the part of the plaintiff insofar as the facts are concerned than the Watson Bros. case. Here intervening between the issuance of the finance report and the certificates in question, was the issuance by the Commission of compliance orders, which did not contain the limitation contained in the findings in the finance proceedings.

The action of the Commission in adopting the finance hearing report was not unanimous. Between the time that the compliance orders were issued and the four certificates were issued, a certificate was granted with respect to the Bennett route, in which the limitations were imposed. Thereafter, and before the certificates were issued by the Commission, proceedings were instituted by competing motor carriers, complaining that the restrictions set up in the finance hearing report were applicable and that the plaintiff was operating in contravention of those conditions.

After all of these things had occurred the four certificates in question were issued. We must bear in mind that insofar as the Commission is concerned, that the words "auxiliary to" or "supplemental of" are not taken from the Act as set forth in the Rock Island case, supra. At pages 433–434 of 340 U.S., at page 391 of 71 S.Ct., the court said:

"But power in the Commission, before issuance of a certificate or approval of acquisition, to limit railroad motor operations so as to make them auxiliary and supplemental to rail service does not necessarily imply power to change the conditions designed to bring about the desired coordination, after issuance of the certificate. The parent railroad may have acquired or developed its motor affiliate in reliance on the conditions stated in the certificate."

The Commission in Smith Bros. Revocation of Certificate, 33 M.C.C. 465, loc. cit. 472, said:

"We may issue decision upon decision, and order upon order, on an application for a certificate so long as sufficient reason therefor appears and until all controversy is determined, but once a certificate, duly and regularly issued, becomes effective, our authority to terminate it is expressly marked off and limited. All the antecedent decisions and orders are essentially procedural in character, and may be set aside,

modified, or vacated, but the certificate marks the end of the proceeding, just as the entry of a final judgment or decree marks the end of a court proceeding.

As was said by the Supreme Court in the Rock Island case, supra, 340 U.S. loc. cit. 448, 71 S.Ct. loc. cit. 398:

"What slight bearing Seatrain has weighs on the side of the interlocutory character of the approval order. The sentence referred to reads: 'But, as the Commission has said as to motor carrier certificates, while the procedural "orders" antecedent to a water carrier certificate can be modified from time to time, the certificate marks the end of that proceeding.'"

Under the Watson Bros. decision, the action of the Commission is an attempt made contrary to Section 212 to revoke and change a certificate duly issued, and is more than the mere correction of a clerical error.

While the above disposes of the case, we are further persuaded that no clerical error exists. The functions of the reviewing court are exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. Rochester Telephone Corp. v. U. S., 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Mississippi Valley Barge Line v. U. S., 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260.

In the Mississippi Valley Barge Line case, supra, 292 U.S. loc. cit. 286–287, 54 S.Ct. loc.cit. 694 the Supreme Court said:

"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

The courts, however, have held in reviewing administrative orders that the orders must be supported by evidence. In Lang Transportation Corporation v. U. S., D.C., 75 F.Supp. 915, loc. cit. 924, the court said:

"Orders of the Interstate Commerce Commission which are contrary to and without adequate support in the evidence are void and have been consistently set aside by the courts." Citing Eastern Central Motor Carriers Association v. U. S., 321 U.S. 194, 64 S.Ct. 499, 88 L.Ed. 668; State of Florida v. U. S., 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291; Baltimore & Ohio Railroad Company v. U. S., 264 U.S. 258, 44 S. Ct. 317, 68 L.Ed. 667, and a number of district court cases.

In the instant case the four orders last referred to are without adequate support in the evidence. The history of the case we have set forth above clearly demonstrates that what was sought to be accomplished here, at this late date, was to restrict the operations of the plaintiff, not because a clerical error had occurred, but based upon the question of whether or not such was desired. A statement by Examiner Croft, at page 59 of the transcript of the hearing, bespeaks as much when he said during the hearing, before testimony was introduced:

"Well, it is my assumption that if the Commission finds that restrictions are desirable, and if it concludes that it has authority to impose them at this time, they will put in restrictions similar to the so-called Kansas City Southern restrictions, including the condition 3, naming either key points or requiring an immediately prior or immediately subsequent rail haul. * * * In other words, I want information on which we can impose a workable restriction."

Where does this indicate that the restrictions will be the result of correcting a clerical error or that the hearing is about a clerical error? The report of the finance hearing examiner as to the four routes was adopted by a divided division of the Commission, with one dissent. Who would say that the Commission is bound by the recommenda-

tions of the hearing examiner? The books are full of cases where the recommendations of the hearing examiners have not been followed, and yet the certificates are not the result of clerical errors. The Commission is not a rubber stamp for the conclusions of hearing examiners.

Months after the approval of the finance report by a divided division, compliance orders were issued for the four routes. Thereafter, a certificate was issued for the Bennett route containing restrictions. A complaint was filed by competing carriers, complaining that the plaintiff was ignoring the restrictions of the finance hearing report, but thereafter the four certificates were issued. In the face of all of this, the Commission would have us believe that the purported changes are made as the result of clerical error.

While, as set out above, under the Watson Bros. case we are of the opinion that the four certificates cannot be canceled as a result of the hearing conducted by the Commission since it was not conducted under Sec. 212 of the Act, yet, if we agreed with the dissenting opinion in the Watson Bros. case, we would still be of the opinion in this case that the four certificates in question could not be canceled and reissued because no clerical error in fact existed. We would not overrule the actions of the Commission taken at the time that the compliance orders were issued, and the certificates were issued merely because the hearing examiner at the finance hearings would have put limitations on the certificates. For us to hold that the members of the Interstate Commerce Commission are bound by the recommendation of a hearing examiner in his report, a report that was adopted by a divided division, would be to hold that the members of the Commission could not have minds of their own.

Clerical errors should be readily apparent. Such is not the case here. Four of the members of the Commission dissented and one took no part. Two of the commissioners wrote dissents setting out that in their opinion the record does not justify the finding of the majority of the Commission.

The arguments advanced here for the defense are the arguments of the minority opinion in the Watson Bros. case, supra. What the Commission is trying to do is limit the four certificates in line with the present policy of the Commission and use a claimed clerical error that does not exist to justify such.

Judgment will accordingly be for the plaintiff with respect to the "Cooper", "Hamm", "Tolson" and "Parker" routes, and the action of the Commission confirmed with respect to the "Bennett" route. Attorneys for the plaintiff will prepare the appropriate Findings of Fact, Conclusions of Law and Judgment, and present same to the court for entry.

MOORE, District Judge.

Reluctantly, I must dissent from the opinion of the majority, believing as I do that the Interstate Commerce Commission acted correctly. After examining the record, I am persuaded that the omission of the proviso from the operating certificates (other than the "Bennett" certificate) was, in fact, a clerical error on the part of the Commission and not, as plaintiff alleges, the result of an intentional decision to reverse the determination made at the finance hearings at which both plaintiff and competing carriers participated and offered evidence. The unrestricted compliance orders which are at variance with the finance hearings' determinations were made without any hearing at which intervenor motor carriers might have been heard. The intervening motor carriers and the defendant Commission did not sleep on their rights in this matter. Protests were filed with the Commission even before the operating certificates were issued. I think it is significant that rail-affiliated motor carrier applications for authority to offer motor-carrier services to the public were a distinct

minority of the total number of motor carrier service authorizations sought in the 'thirties and the 'forties; no doubt those charged with the responsibility of issuing compliance orders and operating certificates found it easy to omit the proviso which was required on only a few of the motor carrier certificates with which the Section of Certificates dealt. I think it is also noteworthy that plaintiff did not file a petition for reconsideration after the conclusion of the finance hearings, as was its right under the procedural rules of the Commission. I.C.C. General Rules of Practice. 101(a).

I cannot see that Transportation Company's case would be any stronger if I were in fact persuaded that the omissions from the finance orders and certificates were intentional. I do not see how plaintiff could justify changes in the Commission's findings made without giving notice, or an opportunity to be heard to those appearing at the acquisition proceedings. 49 U.S.C.A. § 305(a).

I cannot accept the view of the majority that the Watson Bros. Transportation Co. case is controlling. The basis for my view is that the "power to modify" issue which the Watson case is supposed to have settled was expressly reserved by the Supreme Court in the Rock Island case, supra.

> "This leaves unanswered the question of the power of the Commission to modify a railroad-affiliated motor carrier's certificate so as to make its operation auxiliary to and supplemental of the rail service, when no reservation for or restriction to that effect has been placed in the order directing the issue of the certificate or the certificate itself. If any such procedure should be undertaken by the Commission, that answer should await a fully developed statement and argument by the interests affected." 340 U.S. 419, 445, 71 S.Ct. 382, 397, 95 L.Ed. 391.

The decision of the three-judge court in that case was affirmed in the Supreme Court on motion. Rule 16, subd. 1(c) of the Revised Rules of the Supreme Court, 28 U.S.C.A. provides:

> "The court will receive a motion to affirm a judgment sought to be reviewed on appeal from a federal court on the ground that it is manifest that the questions on which the decision of the cause depends are so unsubstantial as not to need further argument." 1954, 346 U.S. 951, 964.

The language of this rule persuades me that the Supreme Court did not affirm the decision below on this inadvertence issue, but rather on the lack of hearing and notice. I believe the section of the Interstate Commerce Commission Act, Sec. 212(a), which plaintiff offers in support of its position, is intended to prevent the Commission from making changes in certificates when such certificates have been lawfully issued in accordance with previous findings of the Commission made after due notice and hearing. I do not think that, for example, if in these administrative proceedings the Section of Certificates had erroneously issued a certificate of authority to an intervenor motor carrier instead of to Frisco Transportation Company that such a mistake would permanently tie the hands of the Commission and thus nullify the previous findings made in the prior administrative hearings. On the issue of due process raised by the plaintiff I shall say only that I do not believe any one can acquire an indefeasible interest in a mistake. I see no good reason in the absence of any clear legislative mandate to hold that so powerful an administrative agency as the Interstate Commerce Commission is unable to correct the clerical errors made by a subordinate entity not empowered to vary the findings and decisions of its creator.