## AMERICAN TRUCKING ASSOCIATIONS, INC.,
### ET AL. *v.* FRISCO TRANSPORTATION CO.

No. 15. Argued October 13, 1958.—Decided December 15, 1958.*

---

*Together with No. 16, *Railway Labor Executives' Association et al.* v. *Frisco Transportation Co.*, and No. 19, *Interstate Commerce Commission* v. *Frisco Transportation Co.*, also on appeals from the same Court.

134

*Peter T. Beardsley* argued the causes for appellants in Nos. 15 and 16. With him on a brief for appellants in No. 15 were *Gregory M. Rebman* and *Wentworth E. Griffin.*

*Carroll J. Donohue, Clarence M. Mulholland, James L. Highsaw, Jr.* and *Edward J. Hickey, Jr.* filed a brief for the Railway Labor Executives' Association et al., appellants in No. 16.

*Robert W. Ginnane* argued the cause for the Interstate Commerce Commission. With him on the brief was *Charlie H. Johns, Jr.*

*Ernest D. Grinnell, Jr.* argued the causes for appellee. With him on the brief were *James L. Homire, John E. McCullough, Alvin J. Baumann* and *Bernard G. Ostmann.*

*Solicitor General Rankin* filed a memorandum for the United States.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The issue here is whether the Interstate Commerce Commission has the power to modify certificates of public convenience and necessity containing inadvertent errors, and, if so, whether, in the circumstances of these cases, the Commission could modify certificates which had inadvertently authorized the performance of unrestricted motor carrier services by a wholly owned subsidiary of a railroad.

Appellee, a wholly owned subsidiary of the St. Louis-San Francisco Railway Company, is a common carrier by motor vehicle engaged primarily in the transportation of

property in interstate and intrastate commerce. The greater part of appellee's motor carrier system was acquired in 1938 and 1939 by the purchase of existing independent motor carriers. These purchases were made pursuant to the predecessor of § 5 (2)(b) of the Interstate Commerce Act, 49 U. S. C. § 5 (2)(b), which permits the acquisition by a rail carrier of the rights and properties of a motor carrier if the Interstate Commerce Commission finds that the acquisition "will be consistent with the public interest and will enable such [rail] carrier to use service by motor vehicle to public advantage in its operations and will not unduly restrain competition." [1] In 1938, appellee began seeking permission to operate as a motor carrier over substantial mileage in seven States including routes in issue here. On some of the routes eventually acquired by appellee, the Commission authorized it to carry on unrestricted operations. On others, the Commission imposed restrictions limiting service to points within ten miles of the rail stations of appellee's parent corporation or to transportation of shipments from, to, or through certain cities. In addition, on some routes the Commission imposed additional restrictions to assure that appellee's service would be "auxiliary or supplementary" to the services performed by its corporate parent.[2]

---

[1] The Motor Carrier Act of 1935, § 213, 49 Stat. 556, conditioned acquisitions as follows: *"Provided, however,* That if a carrier other than a motor carrier is an applicant, or any person which is controlled by such a carrier other than a motor carrier or affiliated therewith within the meaning of Section 5 (8) of part I, the Commission shall not enter such an order unless it finds that the transaction proposed will promote the public interest by enabling such carrier other than a motor carrier to use service by motor vehicle to public advantage in its operations and will not unduly restrain competition."

[2] The Commission has long interpreted the language of § 5 (2) (b), quoted above, to confine acquisitions of motor carriers by railroads

This case concerns four of appellee's routes aggregating some 284 miles. Prior to appellee's purchase, each of the routes was serviced by an independent motor carrier which engaged in unrestricted motor carrier operations. During 1938 and 1939, appellee made application to the Commission for permission to purchase the properties and operating rights of these independent carriers. Finance hearings were held before a Commission examiner to determine whether the acquisitions met the applicable statutory standards. Although appellee sought to continue the acquired carriers' unrestricted operations, it represented to the Commission in each of its applications that acquisition of the carriers would enable it to establish coordinated truck service with the train service of its parent railroad along these routes. A number of motor carriers opposed appellee's applications, but the hearing examiner recommended approval of each, subject to various conditions. Among these was the recommendation that the authority granted be subject "to such further limitations, restrictions, or modifications as the Commission may hereafter find necessary to impose, in order to insure that the service shall be auxiliary or supplementary to the train service of the [parent] railroad, and shall not unduly restrain competition." The protestant motor carriers filed exceptions to the hearing examiner's report on one of the purchases and all went to Division 5 of the Commission for action. It reviewed the reports and adopted the examiner's recommendations including the above-quoted condition. Although appellee had asked for authority to operate unrestricted service, it took no exceptions to the Division reports and did not ask for review by the full Commission. Rather, it notified the Commission that it would consummate the approved pur-

_____

or their affiliates to operations which are auxiliary or supplementary to the train service of the railroad. See *American Trucking Assns.* v. *United States*, 355 U. S. 141, 148.

chases subject to the terms prescribed, and, within thirty days of the reports, it did consummate the transactions and commence operations.

Thereafter, in 1939, compliance orders issued to appellee in connection with the four routes in question. These informed appellee that certificates of convenience and necessity authorizing it to engage in interstate and foreign commerce as a common carrier according to specifications set forth in the orders would be issued as soon as appellee complied with applicable statutory requirements, including the filing of rate publications and evidence of security for the protection of the public. The specifications in the compliance orders did not include the condition adopted by Division 5 reserving the right to the Commission to take steps to insure that appellee's service would be "auxiliary or supplementary" to its parent's rail services.

In 1941, prior to the issuance of certificates covering the four routes, a complaint was filed by various competing motor carriers which charged that appellee was performing unauthorized motor carrier service which was independent of its parent's rail services. During the course of this proceeding, a number of certificates of convenience and necessity issued to appellee. Those concerning the four routes in question contained no reservations of authority similar to the ones stated in the finance hearing orders issued by Division 5. On August 1, 1944, Division 5 entered findings in that proceeding stating that appellee was performing unauthorized direct motor carrier service which it had not been authorized to perform by the original acquisition orders. The Division further stated that appellee's original authorization had been limited to services "auxiliary or supplementary" to the rail service of its parent. Because appellee had acquired unconditional certificates, however, the Division did not enter an order, but indicated that the acquisition pro-

ceedings would be reopened to determine what, if any, conditions should be imposed in appellee's certificates.[3] Subsequently, the Commission disapproved the Division's findings that appellee had engaged in operations unauthorized by its certificates, but it stated that the conditions, if any, which should be imposed would be considered in the reopened proceedings.[4]

The reopened proceedings commenced on motion of the Division in 1945. All parties to the proceeding were served with an examiner's proposed report based on the records of the Commission. This report stated that the Commission had approved appellee's acquisitions subject to the right to impose conditions to assure that appellee's operations would be auxiliary or supplementary to the rail service of its parent, but that such a reservation inadvertently had been omitted from the certificates issued to appellee. The report proposed specific conditions to effectuate the original purpose of the Commission—i. e., to assure that appellee's services were solely "auxiliary or supplementary."

Appellee filed exceptions to the proposed report and requested hearings. Thereupon, the Division reopened the proceedings for further hearings which were held in 1946, after which the matter was referred to examiners for further appropriate proceedings. In an exhaustive report, the examiners discussed the history of appellee's operations and the circumstances surrounding the issuance of the unconditioned certificates. They concluded that the certificates could not authorize operations broader than those approved by the Commission in the finance proceedings and that the certificates inadvertently had

---

[3] *Campbell Sixty-Six Express, Inc.,* v. *Frisco Transportation Co.,* 43 M. C. C. 641.

[4] *Campbell Sixty-Six Express, Inc.,* v. *Frisco Transportation Co.,* 46 M. C. C. 222.

omitted relevant restrictions. The Division, in its report, reviewed the Commission's administrative procedures and practices and pointed out how the error probably had occurred. It showed that certificates are prepared by a staff section of the Commission which, after a prescribed lapse of time from the adoption of reports or orders by the Commission authorizing the issuance of certificates, inserts on mimeographed forms containing stock paragraphs the authority described in the findings of the report. It further stated that, under the Commission rules, this staff section has no discretion to alter anything contained in the reports and is charged with the sole responsibility of transposing the Commission findings into certificate form. Different action, if any, which might be desired can only be taken by the Commission or a Division through a formal supplemental report. The certificates are reviewed by a supervisor, who is also without discretionary authority to make changes, and are then issued. The Division reasoned that as no supplemental report had issued between the conclusion of the finance hearings and the issuance of the certificates, the staff section of certificates obviously had made an inadvertent error in transposing the relevant findings.

The full Commission, after oral argument, stressed another aspect of the matter in affirming the action of the Division. In its view, the findings of the finance proceedings which specifically authorized appellee's purchases, subject to the stated limitations, could not be changed to eliminate such limitations without a formal proceeding at which opponents of the unlimited application could be heard. Each opinion within the Commission thus found that the omission from the certificates of the stated reservations had been due to clerical inadvertence which should be corrected. These corrections were ordered, and in addition specified conditions were imposed consistent with the reservations.

Appellee, dissatisfied with the Commission's final order, commenced an action before a specially convened three-judge District Court to have the order set aside. 28 U. S. C. § 2321 *et seq.* Appellee argued, and a majority of the court concluded, over a dissent of one of its members, that under *United States* v. *Watson Bros. Transportation Co.,* 350 U. S. 927, the Commission was without power to order modification of the unconditional certificates issued to appellee. Further, the court held that the record lacked substantial evidence to support the Commission finding that the relevant restrictions were omitted from the certificates due to inadvertency. 153 F. Supp. 572. We disagree with both of these conclusions.

## I.

It is well settled that the Commission has the power to reserve in certificates issued to a rail-affiliated motor carrier the right to impose specific conditions to assure that the carrier's operations will be "auxiliary or supplementary" to the rail services of its affiliate. *United States* v. *Rock Island Motor Transit Co.,* 340 U. S. 419.[5] In that case a certificate, which contained a reservation similar to the one at question here, was issued in 1941.

The reason for the reservation is obvious. Congress, in § 5 (2)(b) of the Interstate Commerce Act, 49 U. S. C.

[5] The appellants in Nos. 15 and 16, American Trucking Associations, Inc., and Railway Labor Executives' Association, urge us to hold that the Commission was without power to issue unconditioned certificates to appellee because of the requirements of § 5 (2)(b) and, therefore, the certificates issued to appellee were void. We have not had occasion to rule definitively whether that Section states rigid requirements that operations of rail-affiliated motor carriers be auxiliary or supplementary to train service. Cf. *American Trucking Assns.* v. *United States,* 355 U. S. 141. As resolution of the question is unnecessary for the present decision, we intimate no position with regard to it.

§ 5 (2)(b),[6] has limited the acquisition of motor carrier franchises by rail carriers or their affiliates to situations where the acquisition will enable the rail carrier to use service by motor carrier to public advantage. The Commission has long interpreted this mandate to confine such acquisitions to "operations which are auxiliary or supplementary to train service," at least in the absence of special circumstances which might justify less restricted operations. *American Trucking Assns.* v. *United States,* 355 U. S. 141, 148, n. 8. To accomplish this congressional purpose, the Commission can either state in the certificate the conditions necessary to provide the limitation or reserve the right to impose conditions should the necessity arise. *United States* v. *Rock Island Motor Transit Co., supra.*

Here, as the record shows, appellee sought the right to carry on unrestricted operations over all the routes which it was acquiring. In some instances, the Commission approved unconditioned operations for reasons which do not appear in the record. In others, however, including the four routes here at issue, approval of only conditional service was granted. Such approval was consistent with appellee's representations that acquisition of the routes would enable it to give service which supplemented the operations of its rail-carrier parent. In fact, the limited approval did not appear inconsistent with appellee's plans, for it took no appeal from the Division report adopting the order of the Commission examiner which clearly stated that the Commission reserved the right to impose future conditions. And appellee consummated the proposed purchases within thirty days of the Division report. Undoubtedly, therefore, at the time of the finance proceedings, the Commission authorized limited operations on the routes in question, to which appellee acceded.

---

[6] See Motor Carrier Act of 1935, § 213, 49 Stat. 556.

Between two and four years later, the Commission issued certificates to appellee which did not contain the reservation. The question arises, therefore, whether the omission of the restrictions from the certificates was due to a conscious policy choice on the part of the Commission or, as found by it, to error in the administrative process of fashioning the certificates. Certainly a conclusion must be based on one or the other of these alternatives because, as is obvious from the findings of Division 5 as well as the full Commission, the staff section of the Commission which prepared the certificates could not exercise discretion in changing the findings, orders and authorizations contained in the Commission reports.

The majority below concluded that the omissions resulted from a policy change, and that the subsequent reopening of the proceedings and conditioning of the certificates was an attempt to restrict appellee's operation on the basis of newly developed policies. The record does not support this conclusion. The District Court believed it significant that Division 5 only adopted the recommendations of a hearing examiner rather than authoring approval orders of its own. Additionally, the court found special meaning in the fact that one of the certificates issued to appellee contained the relevant reservation while the ones in issue did not.[7] Further, the court viewed the issuance of unrestricted certificates after the commencement of the related carrier proceedings in 1941 as especially important. Viewing these facts, the court refused to accept the majority conclusion of inadvertence.

---

[7] The reopened proceedings originally involved six routes. The certificate covering one of these contained a reservation of authority, and conditions imposed in connection with that route are not at issue here. On another route, the Commission's original approval was unconditional as was the certificate issued in connection with it. The Commission has abandoned efforts to impose new conditions on this route.

In our view, however, the Commission conclusion is well supported. First, we see no special significance in the fact that Division 5 adopted, without modification, the hearing examiner's recommendations. Under the practices of the Commission, this is not unusual, see, e. g., 53 M. C. C. 97; 53 M. C. C. 117; 46 M. C. C. 328; and the hearing examiner's report made it clear that appellee's operations were to be circumscribed. Second, there is nothing in the record or in the dissenting opinions of the Commission to indicate that the Commission, or a Division, or any Commissioner instructed the staff to delete the restrictions and increase the scope of appellee's operations. This factor militates strongly in favor of the Commission's conclusion that the reservations inadvertently were omitted, particularly when it would have been improper for the Commission to change its decision without notice to the protestants who had appeared before the hearing examiner in opposition at the original finance proceedings and had taken exception to at least one of the purchases. 49 U. S. C. § 5 (2)(b); 5 U. S. C. § 1004. Cf. *Federal Communications Comm'n* v. *National Broadcasting Co. (KOA)*, 319 U. S. 239. Third, the issuance of one restricted certificate is not inconsistent with the Commission finding because, had the Commission changed its policies, it likely would have treated the route there involved similarly to the four routes in question. In fact, the issuance of this restricted certificate really supports the conclusion that the others were not issued because of a change of policy. Also, the Commission's exposition of its internal procedures shows how the error could easily have occurred. Finally, as the dissent below points out, at the time these certificates were issued, the staff sections of the Commission normally dealt with certificates authorizing unrestricted service by non-rail-affiliated motor carriers. The certificates issued here were, therefore, unusual, and it is easy to see how the restrictions were

omitted. 153 F. Supp. 572, 578–579. Under all these circumstances, the conclusion of the Commission was compelled by the record.

Appellee complains that the Commission, or at least Division 5, improperly took official notice of the internal administrative practices and procedures of the Commission. The first full exposition of these procedures appeared in the report of Division 5 in the reopened proceedings, although certain of them had been mentioned in the hearing examiners' reports. Appellee claims that the Commission had to disclose these procedures at the hearing so that it would have a chance to rebut unfavorable inferences which might be drawn from them. But we fail to see what prejudice could have accrued from taking official notice of the practices, for appellee had adequate opportunity to rebut inferences drawn from them on its argument to the full Commission. *United States* v. *Pierce Auto Freight Lines,* 327 U. S. 515. Particularly is this true where there is no showing that the procedures were misstated to appellee's prejudice. This is not a case like *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n,* 301 U. S. 292, or *United States* v. *Abilene & Southern R. Co.,* 265 U. S. 274, where the "facts" officially noticed were in doubt or controverted or were discussed for the first time in the final decision of the Commission.

## II.

The remaining question is whether the Commission has the power to modify certificates issued due to inadvertence. This Court has, on one occasion, reserved this question in a case where it determined that inadvertence was not the reason for the failure to issue a proper certificate. *United States* v. *Seatrain Lines,* 329 U. S. 424. And on another occasion, in affirming the decision of a three-judge court, we ruled that the power, if any, may only be exercised after proper opportunity for notice and

hearing. *United States* v. *Watson Bros. Transportation Co.,* 350 U. S. 927.

It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake. *Gagnon* v. *United States,* 193 U. S. 451. Rule 60 (a) of the Federal Rules of Civil Procedure recognizes this power and specifically provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." A similar power is vested in the Interstate Commerce Commission. Section 17 (3) of the Act creating the Commission, 49 U. S. C. § 17 (3), provides that: "The Commission shall conduct its proceedings under any provision of law in such manner as will best conduce to the proper dispatch of business and to the ends of justice." This broad enabling statute, in our opinion, authorizes the correction of inadvertent ministerial errors. To hold otherwise would be to say that once an error has occurred the Commission is powerless to take remedial steps. This would not, as Congress provided, "best conduce to the ends of justice." In fact, the presence of authority in administrative officers and tribunals to correct such errors has long been recognized—probably so well recognized that little discussion has ensued in the reported cases. *Bell* v. *Hearne,* 19 How. 252.[8]

---

[8] See also Davis, Administrative Law (1951), 600. And the agencies have presumed the existence of such power. See *Kenosha Auto Transport Corporation—Interpretation of Certificate,* 53 M. C. C. 85; *Petroleum Carrier Corp.* v. *R. Q. Black, doing business as Superior Trucking Co.,* 51 M. C. C. 717; *Greyhound Corporation Extension of Operations—Slidell, La.,* 47 M. C. C. 103; *Santa Fe*

Of course, the power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies. Such was the case in *United States* v. *Seatrain Lines, supra,* where it was apparent that the Commission had not reopened prior proceedings to correct a mistake in the issuance of a certificate but to execute a subsequently adopted policy. Cf. *Watson Bros. Transportation Co.* v. *United States,* 132 F. Supp. 905 (D. C. Neb.), aff'd 350 U. S. 927. To allow the reopening of proceedings in such a case under the pretext of correction would undercut the obvious purpose of § 212 of the Interstate Commerce Act, 49 U. S. C. § 312, which makes the issuance of a certificate the final step in the administrative process. But nothing in that Section prohibits the correction of inadvertent errors. Here, as we have shown, the certificates issued to appellee mistakenly omitted an intended provision, and the Commission's subsequent action was not the execution of a newly adopted policy but, as it found in a proceeding in which appellants participated after notice, merely the correction of the inadvertence.

The judgment of the District Court is

*Reversed.*

MR. JUSTICE WHITTAKER, believing that the evidence does not support the Commission's finding that omission of restrictions from the four certificates of convenience and necessity involved was due to mere inadvertent clerical errors of the Commission's staff, would affirm the judgment of the District Court. 153 F. Supp. 572.

MR. JUSTICE STEWART took no part in the consideration or decision of these cases.

---

*Trail Transportation Company Extension of Operations—New Mexico Points,* 46 M. C. C. 775; *Pan American Airways, Inc., North Atlantic Route Amendments,* 7 C. A. B. 849.