Joaquín Mendoza Aldarondo, Plaintiff and Appellant, *v.* Puerto Rico Government Employees Association, Defendant and Appellee.

No. R-65-209.     Decided May 19, 1967.

*Martín Almodóvar Acevedo* and *Felipe Benicio Sánchez* for appellant. *Luis E. García Benítez* and *María Luisa León Valiente* for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The principal issue to be determined in this petition: Whether a public employee, covered by the insurance system maintained by the appellee Association, whose application to change his insurance from second to first class was denied by the Board of Directors, is, nevertheless, entitled to receive first class insurance by reason of his having been notified, by mistake of the secretary-accountant of the Association, that his petition had been approved, and the cor-

responding monthly deductions for first class insurance were made for the following four years.

The parties submitted the case for decision to the trial court on the following stipulation:

*"Stipulation of Facts*

"The parties appear represented by their respective attorneys and stipulate the following facts:

"1—Plaintiff Joaquín Mendoza Aldarondo rendered services to the Commonwealth of Puerto Rico as state policeman, and applied for pension as being physically disabled.

"2—While rendering service in the police force he became a member of the Puerto Rico Government Employees Association and he applied for death and disability second class insurance of said Association.

"3—That in March of 1959 he applied for a change in the death and disability insurance from second class to first class.

"4—That as a result of said application he was submitted to examination by the doctor of the Association who recommended to the Board of Directors to deny the change from second to first class insurance, of which plaintiff was never notified.

"5—That on March 17, 1959 the Board of Directors of the Government Employees Association met, and according to the stenographic notes in the record of the case, it appears that the physician's recommendation was affirmed and the application to change the class was denied.

"6—That on March 26, 1959, the Association addressed a letter to Ramón Torres Braschi, Superintendent of the Police, which copied verbatim reads as follows:

'In the meeting held by the Board of Directors of this Association on the 17th of this month, the change from second to first class insurance requested by Joaquín Mendoza Aldarondo, who renders services in this department, was approved and, therefore, as of this date, the corresponding quota for first class insurance shall be deducted from this employee's salary.'

"7—That by virtue of this letter the corresponding quota for first class insurance was deducted from the employee's salary.

"8—That an identical letter was addressed to plaintiff informing him that his application had been approved.

"9—That starting April 1959 to February 1963 deductions were made from his salary for the corresponding first class insurance quotas.

"10—In February 1963 he filed a claim for physical disability under the insurance policy of the Association and it was approved.

"11—On March 21 of that same year he was notified that, due to an administrative error, first class deductions had been made from his salary, but that he belonged to the second class insurance and not to the first class, as it appeared in the notice of March 24, 1959.

"12—In February 1964 he requested the Board of Directors of the Association to reconsider the determination made in March 1963 and said body reaffirmed its original decision that plaintiff belonged to second class insurance and not to the first class.

"13—That the Association paid to him in full the physical disability insurance corresponding to the second class amounting to $4,758.43 and refunded to him the difference in first and second class assessments which had been deducted from his salary from April 1959 up to the date of his retirement in February 1963.

"14—That in March 1963 the amount for the second class insurance was $4,758.43 and that for first class was $7,089.60.

"15— .    .    .    .    .    .    .    .

"16—That plaintiff maintains that he is entitled to insurance as first class participant and not as second class participant, and that if there were any error, the same cannot be charged to him and it cannot be prejudicial to plaintiff.

"17—Defendant maintains that the fact that first class participant deductions were made was the result of an error which does not entitle him to any right, since the Board of Directors never approved the change as required by § 856 of Title 3

of L.P.R.A. and the latter is only obliged to pay the corresponding amount for second class."

By agreement of the parties certain facts were added to the stipulation and it was amended in the following manner:

"1—The date on which plaintiff requested the change in the death and physical disability insurance was September 3, 1958 and not March 1959 as stated in paragraph 3 of the stipulation of May 31, 1965.

"2—In February 1963 plaintiff petitioned, and it was approved by defendant, the payment of the insurance for permanent physical disability as a result of having suffered a fracture by compression of vertebrae D.12 and D.13. Exhibit 1, Plaintiff's History and Physical Examination of February 14, 1963, is attached."

On September 21, 1965 the trial court dismissed the complaint, but ordered defendant to pay plaintiff the legal interest on the amount deducted in excess of the quotas corresponding to second class. The briefly stated ground of the decision appealed from is as follows:

"We believe that plaintiff is not entitled to capitalize on defendant's clerical error in notifying its decision."

On appeal plaintiff maintains that the judgment and conclusions of the trial court are erroneous and contrary to law for the following reasons:

"(a) The conclusions of law and the judgment are not warranted in any manner whatsoever by the evidence presented by virtue of the stipulation copied above, and they are contrary to the findings of fact made by the court.

"(b) It clearly appears from the record that from the date of the alleged decision of defendant's Board of Directors, denying plaintiff-appellant's petition, to the date of the decision of said Board to the effect that he was not entitled to first class death or physical disability insurance there elapsed 46 months.

"(c) That, notwithstanding, the court erred in failing to decide (1) that defendant had waived that defense; (2) in fail-

ing to decide that defendants-appellees were precluded, because of their behavior, to raise said defense.

"(d) That said judgment is unmistakably erroneous because it did not consider the fact that appellee's behavior deprived plaintiff-appellant of requesting, while still an employee of the Commonwealth of Puerto Rico, the reconsideration of the alleged decision of the Board of Directors denying petitioner's change of class.

"(e) That the judgment is unmistakably erroneous in failing to apply the rule unanimously established in favor of the assured and against the insurer in similar situations like the one in the above entitled case."

As the parties have done so we shall do and discuss jointly the errors assigned in the appeal.

We shall consider the appeal in the light of the pertinent legal provisions in force between September 3, 1958 and March 24, 1963 during which period the events in question took place.

By virtue of Act No. 133 of 1952, § 20 of Act No. 52 of 1921, original organic statute of the Association, was amended for the eighth time.[1] By said amendment the death and physical disability insurance was again created and divided into two classes which shall be known as first and second class, such employees as shall express their willingness to pay a monthly assessment of one dollar for each death or disability shall belong to the first class, and to the second class shall belong such as pay an assessment of fifty cents.

Pursuant to § 25 of Act No. 52, as amended, to accept the benefits of the insurance system, the permanent officer or employee should make an application for membership addressed to the Chairman of the Board of Directors of the Association, submitting at the same time his photograph

---

[1] Repealed by Act No. 133 of June 28, 1966, effective January 1, 1967. Now appellee is denominated "Puerto Rico Commonwealth Employees Association."

and birth certificate. Said Chairman shall refer to the physician of the Association the application and other documents so that he may make such examination or examinations of the applicant as he may deem proper and report to the Board the result of the examinations. The Board of Directors shall pass upon the application and, if it is approved, it shall notify the applicant and the department or office in which he works of its decision, directing that the corresponding deductions be made. If the application for admission is rejected, then the decision is notified only to the official or applicant-employee.

In relation to the change from the second to the first class, the *Provided* clause of the second paragraph of said § 25 stated:

"Provided, that any member enjoying the benefits of this Act [§§ 1–27] who may petition that his insurance be changed from the second to the first class, or who may petition that his insurance be granted him on account of total permanent disability for work, shall be submitted to a medical examination *following the same procedure as provided for employees applying for admission, and such petition shall require the approval of the Board of Directors.*" (Italics ours.)

On September 3, 1958 appellant, an insured state policeman who "for about 18 years" had belonged to the second class insurance, applied "to change my classification to first class participant." Exh. I. The application in writing having been submitted to the physician of the Association, the latter, after making the examinations which he deemed proper, rendered the following report on March 29, 1959.

"To be denied. This man suffered a labor accident which caused the fracture of both wrists. The S.I.F. having granted to him approximately 30% disability of both wrists, he received $1,300 for said accident. There is a slight limitation of the extreme movements of said articulations and slight loss of strength." Exhibits XI and XII.

On the basis of said adverse report the Board of Directors, in an ordinary meeting held on March 17, 1959, denied the change to first class. However, seven days later, March 24, 1959, the secretary-accountant of said body sent to the then Superintendent of the Police of Puerto Rico the letter copied in paragraph 6 of the stipulation.

On the 30th of the same month, the secretary-accountant himself also wrote to appellant that "Your application to change from second to first class insurance *was approved* by the Board of Directors in the meeting held on the 17th of this month . . . ." Exh. III.

During the four succeeding years, as it was stipulated, deductions were made from his salary corresponding to first class insurance. At the beginning of the year 1963 appellant requests the Board of Directors to grant his insurance for permanent physical disability. It is approved on February 27 of that same year, but then he is paid second class insurance amounting to $4,758.43, and "the amount for the difference in assessments for first and second class . . ." is reimbursed to him. The amount for first class insurance was $7,089.60 which represents a difference of $2,331.17.

Feeling aggrieved by the decision of the Board, appellant requested its reconsideration. It is denied, and he is informed that:

"From the records in our possession it appears that in the ordinary meeting held by the Board of Directors of this Association on March 17, 1959 said body denied your application for changing your insurance from second to first class, in conformity with the report rendered by the Medical Department. According to the documents in our files an employee of these offices committed the error of communicating to you and to the Superintendent of the Police that said change in class had been approved. From and after the date of that letter deductions were made from your salary corresponding to first class insurance.

"The information I have given to you in the preceding paragraph was brought before the consideration of the Board of Directors in their meeting held on the 13th of this month. The Board of Directors decided that the Association is not bound to pay the first class insurance because you do not belong to said class according to the decision of your case on March 17, 1959. The Board of Directors believes that the error committed by the employee who notified you and the Superintendent of the Police that the change in insurance from the second to the first class had been approved, does not alter the fact that actually your petition was denied."

Up to December 31, 1966 the management of the Association was under the exclusive control of the Board of Directors in which the three branches of the Commonwealth were represented.[2] The Board appointed a secretary-accountant to keep the accounts, the minute book, who performed all the other duties which the Board of Directors prescribed. The Board was empowered to prepare rules and regulations which had the force of law without further requirement. The decision of cases of death or physical disability insurance was an exclusive function of the Board.—See §§ 19 to 21—Act No. 52 of 1921 and its amendments in 3 L.P.R.A. §§ 850–852.

On March 17, 1959, we repeat, the petition to change from second to first class insurance was denied by order of the Board of Directors. It was proper that the secretary-accountant notify such order of denial. But it is such secretary-accountant—and not "the Association" as the stipulation copied above reads at paragraph 6—who nine days later, using a letter form for deductions, sends to the Superintendent of the Police the first erroneous letter informing

---

[2] Now it is governed by an assembly of delegates which in turn delegates on a Board of Directors such administrative functions as it deems convenient. The Board designates an Executive Director and fixes his salary. He is the secretary of the Board and the executive official of the Association "and shall perform such other duties as the Board may prescribe . . . ." Sections 5 and 7, Act No. 133 of 1966.

him that ". . . the Board of Directors . . . the change from second to first class insurance . . . approved and, therefore, as of this date . . . quota . . . shall be deducted from this employee's salary."

And it is also said employee who, in compliance with his ministerial duties of notifying the orders, sends the second erroneous letter to policeman Joaquín Mendoza Aldarondo on March 30, 1959. He utilizes therefor, as it appears from Exh. III, another letter form sent to the employee, which is filled out in cases where the application for changing the class of insurance is approved. Said form is printed as follows:

"Mr. .....................................

Dear .....................................

Your application to change the class of insurance was approved by the Board of Directors in the meeting held on ........
.....................................

We have notified ..................................... to make the deductions corresponding to first class insurance as of .......................
.................... .

Cordially yours,<br>Secretary-accountant."

The application and final resolution followed all the steps fixed by law faithfully: filing of the application, referring the same to the physician of the Association, making the corresponding medical examinations, filing the reports and medical observations, final decision of the Board.

The secretary-accountant waits until March 26, 1959, nine days later, to notify the resolution to the Superintendent of the Police and thirteen days later to the employee. He uses, to perform that ministerial or clerical duty, such letter forms prepared to notify the resolutions of the Board approving changes in class insurance, fills them out, signs them, and sends them on said two dates, March 26 and 30

respectively. Thus he notifies an alleged approval of an application to change to first class which was never authorized by the Board of Directors.

The error of notice, which gave rise to this appeal, was committed inadvertently and involuntarily due to lack of the proper secretarial care. A factor which should be taken into consideration to explain the error and mainly the undue monthly deduction of the quota for first class for four years is the fact of having failed to state in writing the order of denial of the Board. In paragraph 5 of the stipulation it is stated:

"That on March 17, 1959, the Board of Directors of the Government Employees Association met and according to the stenographic notes in the record of the case, it appears that the physician's recommendation was affirmed and the application to change the class was denied."

There is no evidence, and it was not stipulated in any manner whatsoever, that the Board of Directors had knowledge of the fact of said erroneous notices. It is at the beginning of 1963 that the employee files his claim for permanent physical disability insurance. At the time of this claim the Board discovers the errors of March 1959, committed by the secretary-accountant when he intended to serve notice of the order of denial entered. On May 15, 1964 they proceed to make the liquidation of second class insurance.

The Board of Directors was composed of 13 members chosen by an assembly of delegates every two years. There is no information in the record as to the change of members from March 17, 1959 until February 1963.

As far as our knowledge goes, we do not know whether similar errors have been committed at the judiciary level, that is, whether in any case the secretary has notified the parties of a judgment dismissing a complaint but informing them that the court sustained it. In the administrative sphere this is the first case we know of.

■ Errors of such nature and weight are not common. When such circumstances do occur, it must be presumed that they have been motivated by error rather than by bad faith.

■ No error, mistake, flaw, or carelessness in the ministerial notice of a decision may affect or alter the true facts, its juridical content, its virtue or legal validity. It might detain or prolong the exercise of the proceedings authorized against the same, or the proceeding for its execution, or the service of notice may be so ineffective—for example, if notice is only served by telephone—that it be tantamount to having made it at no time. But the context of the decision, its sense and effects, shall continue being the same.

The former Code of Civil Procedure as well as the Rules of 1943 and 1958 have provided several remedies to correct procedural errors.

In *Martínez* v. *Superior Court*, 83 P.R.R. 691, 695 (1961) we decided that administrative agencies have the power to correct errors irrespective of the provisions of the law creating the agency. We quote from there *American Trucking Assns.* v. *Frisco Co.*, 358 U.S. 133 (1958), the following:

"Of course, the power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies."

At page 696 we said the following in that case:

"In fact, what we are doing is to apply to administrative agencies the same principles contained in the provisions of the former Rule 60(a) of the Rules of Civil Procedure and Rule 49.1 of the Rules of Civil Procedure of 1958, which provides that 'clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time, of its own initiative or on the motion of any party and after such notice, if any, as the court orders . . . .' *American Trucking Assns.* v. *Frisco Co., supra*. If it has been deemed fair and

reasonable to apply it to judgments rendered by the courts of justice, it is still more reasonable to apply it to administrative agencies created precisely to operate without the inflexibility which generally characterizes the courts. See *Heirs of Rosario v. Heirs of Cortijo, ante,* p. 653."

■ On several occasions we have said that no party in a proceeding has a vested interest in the grammatical and procedural errors of his adversary.[3] In the present case the error is committed by the secretary-accountant of the Board in communicating the decision of the Board. If he had been timely warned, said employee, on his own initiative or by order of the Board, would have served notice correctly. We find an example of an error committed by inadvertence in *People* v. *Miranda,* 56 P.R.R. 574, 576 (1940) where it was said:

"The defendant was convicted, in open court and while present, by the lower court of violating municipal ordinance No. 249 (Transcript of record p. 9). When entering the judgment, the secretary erroneously stated that the defendant had been convicted of infringing the 'Automobile Act,' which error, as has been repeatedly decided by this court, can be corrected at any time. *Marvin & Jones, Inc.* v. *Torres,* 19 P.R.R. 46, and *Cintrón* v. *A. Hartman & Co.,* 43 P.R.R. 170, 177, where it was stated: 'Said clerical errors may be corrected even after an affirmance of the judgment on appeal. (Citations.)'"

■ The law always required that the petition to change the class of insurance should "be approved by the Board of Directors." So that only in case it has been approved is the payment on the basis of first class insurance proper. As the appellee states in its brief, if the Association should pay the first class insurance it would be acting against the law.

---

[3] *Serra* v. *Transportation Authority,* 68 P.R.R. 581, 585 (1948); *Meléndez* v. *Iturrondo,* 71 P.R.R. 56, 60 (1950); *Mariani* v. *Christy,* 73 P.R.R. 729, 736 (1952); *Millán* v. *Caribe Motors Corp.,* 83 P.R.R. 474, 490 (1961).

■■ The mere deduction of monthly assessments corresponding to first class insurance during forty-six months does not imply any waiver or estoppel to invoke the validity of the judgment. In the first place, the Board had no knowledge of the error; in the second place, such waivers or estoppels, where there is authority to make them, or any conduct leading to them, should be intentional and in relation to rights which are known. In order that it be understood that a person waives his rights, he should have full and actual knowledge of the same and his intent to waive them must be clear.

■ What is sought in this case is the payment of a first class insurance, on the hypothesis that the order of May 17, 1959, denying the change, entered after full compliance with the conditions precedent to law, was reversed as a result of the deduction of those forty-six monthly assessments, and in its place there is a state of law in favor of the employee equivalent to an order approving the change in time and form. That cannot be accepted. The integrity, seriousness, and obligatoriness of the decisions given in conformance with the law is a question of public order, and until they are reversed, annulled, or modified, also pursuant to law, they must be respected and complied with, as they were prescribed. The necessity of making this recognition overcomes the inconveniences and possible prejudice to the interested parties, with more reason in the case of ministerial, clerical or office errors, incurred subsequent to the date of the decision.

■ In *Infante* v. *Board of Medical Examiners*, 84 P.R.R. 296 (1961) we made an analysis of several of our decisions which involved erroneous actions of several administrative entities, which were subsequently reversed. Therein we affirmed the final actions against said entities because they were inspired "in strict compliance with the law." At page

304 in the case of Infante, referring to the case of *Vives* v. *Board of Pharmacy*, 24 P.R.R. 626 (1916), we stated:

"It was expressly stated in said case that in cases of this kind, which seriously affect the public interest, it is not possible to apply the principle of law that no one may go against his own acts. At page 629 we stated that: 'This principle may be applied always to the civil relations existing among citizens, but never to the relations between a citizen and the State when a question of public interest tending to protect the rights of the community is involved.' See, also, *Quirós* v. *Board of Pharmacy*, 48 P.R.R. 661."

The law applicable to the *Infante* case required that in order to obtain a license to practice the profession of medicine and surgery in the Island of Puerto Rico the applicant should hold a diploma of doctor in medicine and surgery issued by any accredited university, registered by the Board of Medical Examiners. The university which issued the diploma of medicine and surgery which Dr. Infante had, had never been registered by said Board. Notwithstanding, he was admitted to examination under the wrong impression that his case was covered by the law. Dr. Infante alleged "that the admission card to examinations issued to him by the Board . . . is equivalent to the recognition and registration . . . by the Board, which fact estops the present Board of Medical Examiners from denying admission to examinations under the provisions of 1931." We decided there was no such estoppel. After referring to several continental decisions, we finally said:

"All these decisions follow the general rule that ordinarily estoppel does not arise by reason of the actions of government officers and agents. Although it has been decided that in certain cases the government may be subject to the doctrine of estoppel, we do not believe that, given the circumstances concurring herein, said doctrine should be applied to the Board of Medical Examiners. Thus we decide that said Board was not estopped to refuse to admit Doctor Infante to examination."

For the reasons stated we conclude that the errors assigned were not committed. The judgment appealed from will be affirmed.