Joseph **SOLAR,** Sidney Fisher, Bernard Kelly, Frank Alexander, Vincent Regan, James Horne and Michael Mangot, as Trustees of the District No. 15 Machinists' Pension Fund, Plaintiffs,

v.

PENSION BENEFIT GUARANTY CORPORATION and Kollsman Instrument Company, Defendants.

No. 77 Civ. 5689(MP).

United States District Court, S. D. New York.

Jan. 6, 1981.

Vladeck, Elias, Vladeck & Engelhard, New York City, by Robert A. Cantore, New York City, for plaintiffs.

Bernard P. Klein, Washington, D.C., for Pension Benefit Guaranty Corp.

Shea & Gould, New York City, by Richard L. Spinogatti, Christopher J. Sues, Susan Ratner, New York City, for defendant Kollsman.

## OPINION

MILTON POLLACK, District Judge.

Defendant Kollsman Instrument Company ("Kollsman") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. dismissing Count I of the complaint. The motion is predicated on the resolution by the governmental agency, the defendant Pension Benefit Guaranty Corporation ("PBGC") of questions of motivation and credibility in favor of Kollsman on the basis of which the Agency applied the relevant provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* in favor of Kollsman. The latter is entitled to summary judgment in its favor accordingly on the application to this Court to confirm the results reached by the Agency unless there is any defect in its resolution of the facts.

The Trustees of an employees' pension fund filed this suit for declaratory judgment that Kollsman had "withdrawn" from the Pension Plan and requested a mandatory injunction directing PBGC to invoke the procedures set forth in ERISA § 4063(d), 29 U.S.C. § 1363(d) and to enforce Kollsman's alleged liability under ERISA.

PBGC twice found in favor of Kollsman (on November 9, 1976 and August 11, 1977), ruling on the facts that it had not "with-

drawn" from the Pension Plan. Were it to have "withdrawn", Kollsman would now be liable for a percentage of the Plan's liability to pensioners. At the Court's direction for specific findings on the issue of Kollsman's motivation for a change in its operations the Agency responded with express findings on September 5, 1980 that factually Kollsman was motivated by ordinary and proper business reasons in opening its Plainview repair facility with fewer employees and had no purpose to circumvent the statute, i. e., avoidance of the consequences of § 4063 of ERISA was not a factor in Kollsman's action.

For the reasons shown hereafter Kollsman is entitled to summary judgment in its favor, dismissing Count I of the complaint.

## I.

To focus attention on and for a quick appreciation of the issue before the Court, it may be briefly noted that ERISA calls for aliquot payments to a Pension Fund in a multi-employer set-up on the basis of the number of employees in a business operation and if an employer withdraws from the business covertly and in bad faith, the employer nonetheless remains liable for contributions to the Fund on a fixed and absolute basis. [ERISA § 4063, 29 U.S.C. § 1363].

However, where sound business reasons for scaling down a business operation are found to be the motivation of the employer, such findings cannot be equated with a "withdrawal" from the business. The contributions to the Fund on the scaled-down count, being pursuant to an obligation running from a collective bargaining agreement, established here that Kollsman had not withdrawn from the Plan. The participant's protection by the PBGC was unaffected, under existing law, since guaranteed benefits of participants would be paid by the PBGC to the extent of a Plan insufficiency. [ERISA §§ 4022, 4061, 29 U.S.C. §§ 1322, 1361].

## II.

The written Joint Stipulations of the parties filed on April 30, 1979 on which the case was submitted and the Exhibits herein establish the following:

The plaintiffs are trustees and administrators of a pension fund known as the District No. 15 Machinists' Pension Fund. The defendant Pension Benefit Guaranty Corporation is a non-profit corporation established within the Department of Labor under section 4002(a) of ERISA, 29 U.S.C. § 1302(a), to administer Title IV of ERISA, 29 U.S.C. § 1301 et seq., which governs the termination of pension plans. The defendant Kollsman Instrument Company is a division of Sun Chemical Corporation. Since 1976 Kollsman has maintained its largest factory in New Hampshire.

The Fund of which the plaintiffs are trustees is a collectively bargained, joint labor-management administered fund created in 1958 and operated under the District No. 15 Machinists' Pension Fund Pension Plan, also adopted in 1958. The Fund is maintained jointly by District No. 15 of the International Association of Machinists and Aerospace Workers, AFL–CIO, and by numerous employers whose collective bargaining agreements with District No. 15 require them to contribute to the Fund. The Fund provides pensions to persons represented by District No. 15 and employed by contributing employers.

Since 1942 District No. 15 has been the collective bargaining representative for Kollsman's production and maintenance employees in New York City and Nassau and Suffolk Counties. District No. 15 does not represent Kollsman's employees in New Hampshire. Before 1968, Kollsman had maintained a pension plan of its own for its hourly employees. In 1968 Kollsman agreed to merge its own pension plan with the Fund. Since then, Kollsman has been obligated to contribute to the Fund under successive collective bargaining agreements with District No. 15, and it has so contributed.

During the early 1970s, Kollsman operated its largest factory in Syosset, Long Island. In 1974 Kollsman considered transferring certain of its operations from Syos-

set to New Hampshire. In November 1974, Kollsman and District No. 15 negotiated severance rights for employees who might be terminated as a result of a relocation. Between November 1974 and March 1976, Kollsman phased out its major manufacturing operations in Syosset and transferred them to New Hampshire. Thereafter, between March 1976 and December 1976, Kollsman established a new facility at Plainview, Long Island, and transferred to it the few manufacturing operations remaining at the Syosset plant and the Service and Repair facility that had been maintained there. On about December 31, 1976, Kollsman sold the Syosset facility.

Kollsman has participated steadily in the Fund since 1968, but the number of employees for whom it has contributed has declined, as shown in the following table:

| Year | Kollsman Participants |
| --- | --- |
| 1968 | 1716 |
| 1969 | 1515 |
| 1970 | 1082 |
| 1971 | 1173 |
| 1972 | 1243 |
| 1973 | 1186 |
| 1974 | 901 |
| 1975 | 545 |
| 1976 | 20 |
| 1977 | 11 |
| 1978 | 16 |

*See* Ex. 6. The sixteen employees for whom Kollsman continues to contribute to the Fund are production and maintenance employees at its Plainview, Long Island facility. Kollsman and District No. 15 during the pendency of these proceedings were negotiating new job classifications that would include approximately twenty additional employees.

Under section 4063(a) of ERISA, 29 U.S.C. § 1363(a), upon "the withdrawal of a substantial employer" from a plan under which more than one employer makes contributions, the administrator of the plan must notify the PBGC. The PBGC then determines whether the plan has sufficient assets to pay all benefits guaranteed by the

PBGC under Title IV of ERISA. If not, the PBGC applies one of four statutory measures. The first two measures require the withdrawing employer to post security for the liability that it would owe to the PBGC if the plan were to terminate within five years of the withdrawal without sufficient assets to pay benefits guaranteed by the PBGC. ERISA § 1363(c). Under the third measure in section 4063, the PBGC directs that the plan be partitioned. ERISA § 4063(d), 29 U.S.C. § 1363(d). The portion of the plan attributable to the withdrawing employer is separated from the rest of the plan and terminated immediately. The remainder of the plan then continues as a separate plan. The fourth measure under section 4063(e), 29 U.S.C. § 1363(e), authorizes the PBGC to waive the other requirements of section 4063 if it determines that the employers who participate in the plan have entered into an indemnity agreement that satisfies the purposes of the section and of section 4064, 29 U.S.C. § 1364.

On January 15, 1976, the Trustees notified the PBGC that Kollsman had reduced its contributions to the Fund and requested that the PBGC partition the Fund under section 4063(d). The PBGC asked the Trustees and Kollsman to submit various information relating to the request by the Trustees. Based on those submissions, the PBGC determined that Kollsman was still a contributing employer and had not withdrawn from the Fund and so advised the Trustees on November 9, 1976.

In a letter of December 1, 1976, the Fund asked the PBGC to reconsider its decision that Kollsman had not withdrawn. On March 9, 1977, the PBGC held a conference with representatives of Kollsman and the Fund, including counsel for the Fund. The parties had an opportunity to present their views on whether Kollsman had withdrawn from the Fund and to submit any evidence they wished.

After this conference, the PBGC again concluded that Kollsman had not withdrawn from the Fund. The PBGC notified the Trustees of its determination in a letter

dated August 11, 1977, which said in relevant part:

It appears that a withdrawal under Section 4063 of the Act has not occurred. Kollsman continued to be obligated and is contributing to the Plan on behalf of employees covered by the pertinent collective bargaining agreement. The fact that the number of covered employees has been drastically reduced, and that the manufacturing operation has been converted to a repair center does not constitute a withdrawal under the Plan or under Section 4063, in our view. The key fact is that Kollsman has not ceased to be covered by the Plan and continues to contribute to it.

This letter serves to finalize and affirm our determination of November 9, 1976. We are closing our file on this matter.

The plaintiffs then filed this action, in which they demand a judgment, first, "reversing the final determination of defendant PBGC, dated August 11, 1977, and declaring that defendant Kollsman has withdrawn from the Fund within the meaning of ERISA" and, second, "granting a preliminary and final mandatory injunction directing defendant PBGC to take all necessary and appropriate steps to invoke the procedure set forth in Section 4063(d) of ERISA, 29 U.S.C. § 1363(d), and determine and enforce defendant Kollsman's liability under any and all pertinent provisions of ERISA."

Pursuant to the Court's direction, the two claims for relief were severed, and the parties cross-moved for summary judgment on Count I.

### III.

▪ The single issue before the Court on the cross-motions for summary judgment was whether there was in fact a "withdrawal," as used in section 4063 of ERISA. The statute does not define the term in any mode other than its conceptual meaning, nor does the legislative history illumine its meaning; no line of demarcation, short of withdrawal, was set by Congress. *See* Employee Retirement Income Security Act of 1974: Conference Report, H.R.Rep.No.1280, 93d Cong., 2d Sess. 379, *reprinted in* [1974] U.S.Code Cong. & Ad.News, pp. 4639, 5158.

The plaintiffs argue first that if the term "withdrawal" is interpreted to mean only a complete termination of any employer's contributions, rather than to include "a significant reduction in contributions" by a 99 percent reduction that took place here, an employer could evade its liability under section 4063 altogether simply by terminating its contribution in two steps rather than one. The employer, say the plaintiffs, could covertly terminate a substantial amount of its contributions without incurring liability because no "withdrawal" had taken place. Making only a fraction of its previous contribution, the employer within two or three years would cease to be a "substantial employer" as defined in sections 4001(a)(2), 29 U.S.C. § 1301(a)(2), and 4063(a)(1), 29 U.S.C. § 1363(a)(1). The argument runs, that having ceased to be a "substantial employer," the employer could then terminate his remaining contributions, again without incurring liability, because section 4063 comes into play only upon the withdrawal of a "substantial employer." Thus, at the cost of keeping a minor percentage of its employees for two or three years and making pension contributions on their behalf during that time, the employer could scheme to avoid altogether the liability that it would have incurred under section 4063 if it had terminated all of its employees at once.

The PBGC agreed that the statute should not be interpreted so as to allow the type of evasion hypothesized above, and stated that "[t]he PBGC has not precluded the possibility that it would apply Section 4063 to an employer that remained in a plan primarily for the purpose of avoiding liability under Section 4063." Both defendants argued, however, that there was no evidence before the PBGC that Kollsman opened its small facility in Plainview in order to avoid liability under section 4063, rather than for *bona fide* ordinary business reasons.

The parties expressly stipulated herein that:

Based on the information and materials submitted by the Plan and by Kollsman, the PBGC found no reason to believe that Kollsman established the Plainview Service and Repair Center for other than a *bona fide* business reason or that they established it to avoid liability under Section 4063 of ERISA, 29 U.S.C. § 1363. (filed April 30, 1979)

It was unclear to the Court, however, whether the information and materials requested by or submitted to the PBGC expressly covered and pertained to Kollsman's reason for establishing the facility at Plainview. The PBGC did not mention Kollsman's reasons in either of the letters in which it informed the Trustees that their application under section 4063 had been denied. Accordingly, the Court, before stamping its approval on the Agency's findings and conclusions, requested express clarification by the Agency on the subject. This will be discussed *infra*.

### IV.

In their second argument, the plaintiffs relied on the purposes of Title IV, namely:

(1) to encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants, [and]

(2) to provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans to which this subchapter applies ... (ERISA § 4002(a), 29 U.S.C. § 1302(a))

These purposes would be better served, the plaintiffs argued, if "withdrawal" were interpreted also to mean a drop in contributions so large that it imperils the viability of the plan, rather than to mean only what the word implied, viz., a complete cessation of contributions.

The defendants replied that, in its ordinary meaning, the term "withdrawal" refers to complete cessation, not merely a reduction whether small or large, providing that the latter is in good faith for an ordinary business reason. Further, in using the similar term "termination," Congress had distinguished clearly between a "termina-

tion" and a "partial termination," *see, e.g.*, ERISA § 4043(b)(4), 29 U.S.C. § 1343(b)(4). Finally, the defendants argued that multi-employer pension plans are subject to large fluctuations in contributions and it would not be feasible to invoke section 4063 whenever any particular employer's contributions fell substantially.

### V.

The Court was of the opinion that the plaintiffs' first argument—that the term "withdrawal" should not in good conscience be interpreted to allow employers to avoid their liability by a two-step reduction in contributions with a purpose to defeat the pension scheme, and that there should be no ambiguity on whether a reasonable business purpose—had been clearly established before the Agency. Further that this ought to be addressed first by that expert agency. In particular, the PBGC should state what its inquiry into Kollsman's purpose in establishing its small new facility had showed. It was always up to PBGC to consider the procedures, standards and burdens of proof by which a purpose to avoid liability should be determined. All parties seemed to acknowledge that 100 percent termination of contributions is not necessary to achieve a "withdrawal" where the motive is to circumvent section 4063.

With respect to plaintiffs' second argument, the Court, in agreement with the stated interpretation and policy of the PBGC at the time, rejected the contention that a less than 100 percent reduction in contributions could constitute a withdrawal where the reduction was motivated by reasonable business purposes rather than a desire to evade the consequences of section 4063. *Compare E.I. du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 54–55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977).

Accordingly, in order to clarify paragraph 18 of the Joint Stipulation of Facts, the Court, by Order dated June 5, 1979, directed the PBGC to make "the requisite inquiry into and findings relating to Kollsman's purpose in opening the Plainview facility." Pending receipt of such clarification, deci-

sion of the sub-judice motions for summary judgment on Count I was held in abeyance.

Thereafter, PBGC conducted the inquiry as directed and supplied its express responsive findings pursuant to the Order of June 5, 1979 which concluded that "Kollsman opened the Plainview repair facility on Long Island, New York for ordinary business reasons and that the avoidance of the consequences of Section 4063 of ERISA was not a factor in Kollsman's decision."

These Agency findings are based on substantial evidence and the admitted policy of the Agency for the period in question and are not inconsistent with the original legislative intent. Indeed, PBGC *In the Matter of The Bohack Corporation*, No. 74 B 933 (E.D.N.Y. May 18, 1977) expressly and successfully persuaded the Court that even a substantial reduction of personnel is not a "withdrawal" from the Plan. The Agency findings herein therefore entitle Kollsman to summary judgment on Count I of the Complaint. *E.I. du Pont de Nemours & Co. v. Collins, supra*, at 57, 97 S.Ct. at 2235. *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

## VI.

Before submitting its clarifying findings on the stipulated facts in compliance with this Court's Order of June 5, 1979, the PBGC apparently underwent a personnel change and sought to withdraw its motion for summary judgment and moved, over Kollsman's opposition, for leave to serve an amended answer, and for a dismissal of this action, or in the alternative, for a full remand to the PBGC. The Court ruled that the case had not been remanded to the Agency other than for clarification of the findings already made, that the matter was *sub judice*, and that until such clarification was obtained, consideration of other matters would not be entertained. After receiving the PBGC's clarifying finding that Kollsman's purpose in opening its Long Island facility was for *bona fide* ordinary business reasons and not to evade section 4063, the Court considered and granted PBGC's requested abandon-

ment of its motion for summary judgment but without prejudice to Kollsman's motion for summary judgment in its favor. PBGC's other motions were denied; these sought a full remand to the Agency and for leave to change its theory and position on the merits which would have set at naught its formal stipulation with Kollsman of the facts. The motions denied were viewed by the Court as a means to impose a theory recently conceived to avoid an inevitable decision for Kollsman after the matter had been fully submitted for decision. The PBGC then tried another tack; it submitted a motion for leave to serve a second amended answer and another motion for summary judgment, this time requesting judgment in favor of PBGC but against Kollsman.

PBGC's motions for leave to serve a first and second amended answer, its motion for dismissal or remand, and its most recent motion for summary judgment are based on an avowed recent change of Agency policy in its interpretation of the term "withdrawal" as used in section 4063, a change made after this case was fully submitted on stipulated facts for the Court's decision. Under its proposed new definition, PBGC would find Kollsman to have withdrawn from the Fund, without regard to the findings of fact and solely because Kollsman had significantly reduced its participation in the Fund. PBGC argues that the Court should accept this new principle on the ground that it is not arbitrary nor capricious and that it should be accorded deference even though it is a change of position made after the case became *sub judice* on a stipulated record. *NLRB v. Local Union No. 103*, 434 U.S. 335, 351, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978). Relying on *NLRB v. Coca-Cola Bottling Company*, 350 U.S. 264, 269, 76 S.Ct. 383, 386, 100 L.Ed. 285 (1956), the PBGC further argues that the Agency's new policy attitude should be affirmed if "... that definition does not appear too farfetched."

This most recent motion for summary judgment is essentially equivalent to a motion to set aside the stipulation made by the PBGC and for a remand to the Agency for *de novo* reopening of the entire matter be-

fore the Agency in order that it may retroactively apply its new policy. *See* ERISA § 4063(a) (requiring PBGC to determine whether any substantial employer who has withdrawn from a plan "is liable for any amount.") The PBGC fails, however, to justify why it should be allowed to start back at the beginning of a case upon which it has already made a full and final determination and has in effect stipulated judgment in favor of Kollsman, and now to make applicable to cases finally decided by it in earlier years, a newly conceived approach. Unlike some statutes which explicitly allow for this sort of agency redetermination, *see, e. g.*, 49 U.S.C. § 17, 29 U.S.C. § 160, ERISA is silent in this regard. Moreover, there appear to be no persuasive reasons to justify allowing the PBGC to vacate its 1977 final determinations and to apply its new interpretation retroactively to Kollsman.

Professor Davis sets forth the following guidelines for determining, in the absence of specific statutory provision, whether to allow an agency to reopen or reconsider a final decision:

> When statutes are silent and legislative intent unclear, agencies and reviewing courts must work out the practices and the limits on reopening. The considerations affecting reopening to take account of new developments or of new evidence of old developments often differ from those affecting the correction of mistakes or shifts in judgment about law or policy.... Factors to be weighed are the advantages of repose, the desire for stability, the importance of administrative freedom to reformulate policy, the extent of party reliance upon the first decision, the degree of care or haste in making the earlier decision, the general equities or each problem. 2 Davis, Administrative Law Treatise § 18.09 at 607 (1958).

*See, Upjohn Company v. Pennsylvania Railroad Company*, 381 F.2d 4 (6th Cir. 1967) (ICC had no authority to reconsider prior decision denying reparation claim merely because it had adopted a different policy in a proceeding some three years later in another matter with the same factual situation).

Here, the PBGC was first notified of this situation in January of 1976. It twice found in 1977 in favor of defendant Kollsman on the basis of substantial evidence and of the admitted policy of the Agency for the period in question. The Agency has never set aside its earlier order; indeed it has since adhered to the principle of its order in *Kollsman*. *Compare* PBGC's Memorandum of Law in 1978 *In re Bohack Corporation*, 74 B 933 mentioned *supra* (withdrawing its claim in bankruptcy proceeding, which was based on ERISA § 4063, on the ground that the corporation had not ceased contributing and therefore could not be deemed to have withdrawn). This policy, the Court finds to have been neither arbitrary nor capricious. When the instant action was brought before this Court, PBGC joined Kollsman in moving for summary judgment. Now, four years after receiving notice of the case and making its first determination, PBGC has, with new personnel and new horizons, changed its mind as to its policy and wants a second chance at deciding this case. However, PBGC offers no change in circumstances, presents no new evidence, nor cites any error in its previous determinations that would justify its request.

The Court recognizes the authority of the PBGC to modify its interpretation of ERISA in response to greater experience or to changed conditions, and to alter its policy determinations in accordance with such changed interpretation. Such authority does not extend, however, to the retroactive application of the new policy to this case in which the Agency has made a full *and final* determination and after court confirmation thereof was sought and was *sub judice*. In order to prevent prejudice to defendant Kollsman by the retroactive application of PBGC's new policy, and in the interests of finality, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *CAB v. Delta Airlines, Inc.*, 367 U.S. 316, 321, 81 S.Ct. 1611, 1621, 6 L.Ed.2d 869 (1961); *compare, American Trucking Association, Inc.*

**1124**

*v. Frisco Transportation Company*, 358 U.S. 133, 146, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958), this Court grants defendant Kollsman's motion for summary judgment and denies the PBGC's motions for leave to serve a second amended answer and for summary judgment. By so holding, plaintiffs' second claim for relief is made moot.

Summary judgment in favor of Kollsman herein and against the other parties hereto is hereby ordered to be entered herein on the first claim for relief and the second claim in the complaint is accordingly dismissed.

SO ORDERED.