666 F.2d 28
 2 Employee Benefits Ca 1699
 Joseph SOLAR, Sidney Fisher, Vincent Regan, James Horne,
Michael Mangot, as Trustees of the District No. 15
Machinists' Pension Fund, Plaintiffs- Appellants,
v.
PENSION BENEFIT GUARANTY CORPORATION,
Defendant-Appellee-Cross-Appellant,
and
Kollsman Instrument Company, Defendant-Appellee.
 Nos. 1382-1383, Dockets 81-6036, 81-7068.
 United States Court of Appeals,
Second Circuit.
 Argued June 16, 1981.
Decided Aug. 3, 1981.
 
 Bernard P. Klein, Washington, D.C. (Henry Rose, Mitchell L. Strickler, James N. Dulcan, and Stephen D. Schreiber, Washington, D.C., on the brief), for defendant-appellee-cross-appellant Pension Ben. Guaranty Corp.
 Robert A. Cantore, New York City (Judith P. Broach, and Vladeck, Elias, Vladeck & Engelhard, New York City, on the brief), for plaintiffs-appellants Trustees.
 Richard L. Spinogatti, New York City (Bruce A. Hecker, Christopher J. Sues, Susan B. Ratner, and Shea & Gould, New York City, on the brief), for defendant-appellee Kollsman Instrument Co.
 Before TIMBERS and VAN GRAAFEILAND, Circuit Judges, and COFFRIN, District Judge.*
 PER CURIAM:
 
 
 1
 On this appeal from an order granting summary judgment, Milton Pollack, District Judge, 504 F.Supp. 1116 (S.D.N.Y.1981), entered on the motion of Kollsman Instrument Company, dismissing the complaint of the Trustees of District No. 15 Machinists' Pension Fund, and denying motions of the Pension Benefit Guaranty Corporation for leave to serve a second amended answer to the Trustees' complaint and for summary judgment on behalf of Pension Benefit, we affirm substantially for the reasons set forth in Judge Pollack's comprehensive, well considered opinion of January 6, 1981 which is officially reported.
 
 
 2
 Affirmed.
 
 COFFRIN, District Judge, dissenting:
 
 3
 I respectfully dissent.
 
 
 4
 Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1301 et seq., which established the pension plan termination insurance program and the Public Benefit Guaranty Corporation (PBGC) to administer it, lists among its purposes:
 
 
 5
 (1) to encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants,
 
 
 6
 (2) to provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans to which this subchapter applies....
 
 
 7
 ERISA § 4002(a), 29 U.S.C. § 1302(a). In furtherance of these purposes, Title IV creates a scheme of employer liability which may be triggered upon the "withdrawal" of a substantial contributing employer from a pension plan under which more than one employer makes contributions. PBGC is granted considerable latitude in applying one of several measures of employer liability which may become fixed immediately or may be contingent upon the termination of the plan within five years of the withdrawal. ERISA § 4063, 29 U.S.C. § 1363.
 
 
 8
 There is nothing in the 1974 Act to indicate what constitutes withdrawal nor can the intent of Congress in this regard be determined by the legislative history.[1] Following appellants' notification to PBGC in early 1976 that appellee had significantly reduced its contributions to the multiemployer pension plan, PBGC, then a fledgling agency, ruled that section 4063 relief was unavailable to appellants because less than a total cessation of participation in the plan did not constitute a withdrawal. After appellants had filed suit in the district court for declaratory and injunctive relief and while the matter was sub judice, PBGC notified the court that it had retracted its initial position and would interpret withdrawal to include substantial withdrawal. Unwilling to apply PBGC's amended position to the instant case, the district court awarded judgment for appellees relying upon PBGC findings that the actions of appellee which resulted in a 99 percent reduction in appellee's plan contributions from its peak involvement were taken for ordinary business reasons and not to avoid the consequences of section 4063.
 
 
 9
 I am satisfied that the position now advanced by PBGC comports with a more rational understanding of the statutory scheme and better effectuates the purposes of the Act than the agency's initial interpretation. The scheme of employer liability created by Title IV is predicated not upon employer fault or bad faith but rather upon protection of vested employee benefits and preservation of the integrity of the plan termination insurance program. In the present case, the employer's share of unfunded liabilities was represented at oral argument to be nearly $10 million at the time the trustees sought section 4063 relief. Although the employer remained in the multiemployer plan and continued to make contributions for a small group of employees, the burden of the unfunded liabilities was almost entirely transferred to the other contributing employers. The magnitude of the unfunded liabilities is not, of course, directly relevant to the issue here presented. It is, however, graphic illustration of the nature of the forces which can undermine multiemployer pension plan integrity.
 
 
 10
 I attach no significance, as the district court apparently did, to the fact that PBGC did not retreat from its initial interpretation of the withdrawal requirement until the matter had been pending below for considerable time. Noting that PBGC does not have the authority to apply its amended interpretation retroactively after it had made a final determination and while the matter was sub judice, the district court granted judgment for appellee "in order to prevent prejudice to (appellee) by the retroactive application of PBGC's new policy, and in the interests of finality." Solar v. Pension Benefit Guaranty Corp., 504 F.Supp. 1116, 1123 (S.D.N.Y.1981). I disagree with this analysis. The cases cited by the district court in support of its conclusion involved agency attempts to reopen earlier proceedings in order to apply newly adopted agency policies. These attempts amounted to collateral attacks on the earlier proceedings and did indeed run afoul of the policy of finality as well as the principle of res judicata. Here, however, appellants sought judicial review of the PBGC determination by instituting this action for declaratory and injunctive relief. This is a direct attack on the administrative decision. See 2 Davis, Administrative Law Treatise, § 18.10 at 613-14 (1958) ("Normally, a challenge of administrative action by injunction (or) declaratory judgment ... is deemed a direct attack when no statutory method of review is prescribed"). Because res judicata has not yet attached, the policy of finality is simply not at issue. See id. at 612 ("if ever an administrative decision is to be res judicata for purposes of later proceedings in court or in another agency, it must be res judicata only when it is collaterally attacked, since holding it res judicata on direct attack would deny all opportunity to challenge it").
 
 
 11
 In this posture, I believe that the district court misconstrued its role. In ruling on the cross motions for summary judgment, it was not required to apply PBGC's initial interpretation of the statutory term "in the interests of finality" and "in order to prevent prejudice" to appellees. It is true that reviewing courts should be slow to overturn an administrative decision, but they are not obliged to stand aside and rubber stamp affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate a congressional purpose underlying a statute. See NLRB v. Brown, 380 U.S. 278, 291 (1965); SEC v. Sloan, 436 U.S. 103, 118 (1978). Here, PBGC has renounced its initial interpretation of the statute underlying its decision in this matter. PBGC's revised interpretation, which followed from greater experience in construing and applying the statute, is entitled to some deference. Moreover, Congress amended ERISA in 1980 to incorporate the very construction which PBGC now advances. See fn. 1. This legislation, which is not made retroactive, is not, of course, conclusive in determining what the previous Congress meant. The later law does vindicate PBGC's revised view, however, and is entitled to weight in resolving the problem of construction. See Chrysler Corp. v. Brown, 441 U.S. 281, 299-300 (1979); Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81 (1969); FHA v. The Darlington, Inc., 358 U.S. 84, 90 (1958). The purposes of ERISA, its revised administrative construction, and the construction which a later Congress incorporated all point to the conclusion that the withdrawal requirement of the Title IV provisions for employer liability is satisfied by the substantial withdrawal which occurred here-a 99 percent reduction in appellee's plan contributions.
 
 
 12
 For these reasons, I would remand the case to the district court with the instruction that the action be remanded to PBGC for further consideration pursuant to section 4063 of ERISA, 29 U.S.C. § 1363, and PBGC's revised interpretation of the withdrawal requirement.
 
 
 
 *
 Hon. Albert W. Coffrin, United States District Judge for the District of Vermont, sitting by designation
 
 
 [1]
 Congress has since amended ERISA to provide for employer liability in cases of both "partial withdrawal" and "complete withdrawal" of a substantial contributing employer from a multi-employer plan. See Multiemployer Pension Plan Amendments Act of 1980, Pub.L.No. 96-364, § 104, 94 Stat. 1208. These amendments were not made retroactive. See id., § 108(c)