**DALE BLAND TRUCKING, INC., Gibco Motor Express, Inc., Gibson Trucking Company, Inc., Haley Bros. Coal & Supply, Inc., and Materials Transport, Inc., Appellants (Protestants),**

v.

**CALCAR QUARRIES, INC., Appellee (Petitioner).**

No. 2–1278A453.

Court of Appeals of Indiana, Second District.

March 17, 1981.

Michael V. Gooch, Harrison, Moberly & Gaston, Indianapolis, for appellants.

Robert W. Loser, II, Loser & Loser, Indianapolis, James C. Tucker, Tucker & Tucker, Paoli, for appellee.

SULLIVAN, Judge.

In 1941, a certificate of public convenience and necessity was issued to Glenn Meadows by the Public Service Commission. That certificate allowed the transportation of "commodities usually and ordinarily transported in dump vehicles". In 1955, Wanda Meadows, as administrator of Glenn Meadows's estate, filed an application for the sale and transfer of that certificate to Calcar Quarries, Inc. (Calcar). After a hearing on that application, the Commission, on February 17, 1956, approved the transfer and in its order authorized the following:

> "Road construction stone, agricultural limestone, limestone, sandstone, crushed stone and other stone, Lime, Lime products, sand, gravel, dirt, road building materials, road building machinery & supplies and mining equipment and supplies, quarrying equipment, bituminous road building material of all kinds, concrete,
>> Over all Federal, State and County Highways in the State of Indiana, south of U.S. Highway 40 for the transportation of those commodities usually and ordinarily handled by dump trucks, limiting all hauls to a distance not exceeding 50 miles from point of origin to point of destination." (Emphasis deleted.)

The discrepancy between the terms of the original certificate and the terms of the transfer certificate precipitated the filing of a petition for clarification and correction by Calcar on March 17, 1978. A public hearing was held on the petition at which time Gibson Trucking Co., Inc., Gibco Motor Express, Inc., Dale Bland Trucking, Inc., Materials Transport, Inc., and Haley Bros. Coal & Supply, Inc. (Protestants) entered their protest. Thereafter, the Hearing Examiner submitted a report and recommended order suggesting that the petition at issue be denied. However, on July 26, 1978, the Commission by majority vote, found that the language of the certificate was ambiguous, founded upon nonspecific findings of fact, and therefore invalid and ineffective. Accordingly, the Commission ordered the clarification and correction of the certificate.

Protestants appeal that order. They urge that the Commission's decision to grant the relief sought by Calcar was contrary to law because:

1) it was beyond the Commission's jurisdiction, and

2) it was an abuse of discretion.

First, Protestants submit that the Commission was without jurisdiction to grant the relief sought. They argue that no administrative agency may reopen final decisions after a reasonable time has elapsed. Additionally, they contend that 22 years is not a reasonable period of time. Although Protestants couch their objection to the Commission's actions in terms of lack of jurisdiction, it would serve no useful purpose for us to embark upon an extensive discussion of jurisdiction. The true issue here is whether the Commission had the authority to abrogate a 22-year-old decision.

It is well established that an appellate court may not substitute its own opinions and conclusions for those of an agency. Rather, deference must be given to the expertise of that agency. *Capital Improvement Board v. Public Service Commission* (2d Dist. 1978) Ind.App., 375 N.E.2d 616, 628. However, an administrative agency is not immune from judicial review. The orders of such agencies may be reviewed to determine whether the agency has acted within the scope of its powers, whether the record supports the factual conclusions, and whether the determination comports with the applicable law. *Indiana Department of*

*Public Welfare v. Anderson* (2d Dist. 1976) Ind.App., 357 N.E.2d 267.

■ The problem of an administrative agency's continuing authority to change its orders is a troublesome one. Certainly, an agency may modify orders pursuant to express statutory provisions governing the subject. Even where legislative direction is absent or unclear, some courts have held that the agency has some inherent power to reopen orders. *See, e. g., Burlington County Evergreen Park Mental Hospital v. Cooper* (1970) 56 N.J. 579, 267 A.2d 533. The United States Supreme Court in *American Trucking Associations Inc. v. Frisco Transportation Co.* (1958) 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed. 172, held that the Interstate Commerce Commission is vested with the power to correct decisions which contain clerical errors or decisions which were issued due to inadvertence or mistake. The court in *American Trucking* was careful to point out, however, that the power to correct clerical or inadvertent errors should not be used as a pretext to change previous decisions when the wisdom of the past decisions appears doubtful in light of current policies. The instant case does not fall under the rubric of *American Trucking* because the Commission never determined that a clerical or inadvertent error had been committed. Rather, the Commission here decided that the 22-year-old order issued pursuant to the sale and transfer proceeding was ambiguous because the itemized list of transportable commodities did not reflect all the authority contained in the original certificate which was purported to be transferred. The Commission further determined that to the extent that the order be deemed a partial denial of the transfer sought, it was unlawful because it was not founded upon specific findings of fact. For these reasons, the Commission ordered that, in the public interest, the certificate be corrected to duplicate the language of the original certificate, i. e., "those commodities usually and ordinarily hauled by dump trucks".

■ It is contended that the power to effect such change comes from I. C. 8–2–7–6 (Burns Code Ed. Supp. 1980), which states in pertinent part:

"(i) The commission shall have the power and authority, under this chapter, to do and perform all reasonably necessary things to carry out the purpose and intent of this chapter, whether herein specifically mentioned or not. . . ."

Alternatively, Calcar Quarries urges that the power exercised in the case at bar falls within the agency's implied or inherent power. In either case, the existence of such a power depends on the purpose and intent of the legislature in creating the Commission and the nature of the functions of the Commission. In creating the Commission, the Indiana legislature set forth the following declaration of policy:

"It is hereby declared to be the policy of the legislature of Indiana *to provide for fair and impartial regulation of all modes of* transportation subject to the provisions of the laws of the state of Indiana, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to make the highways safe for the general public; that the wear of such highways may be reduced; that inconvenience to other users of the highways may be minimized; that minimum hindrance and stoppage to other users of the highways compatible with the needs of the public for adequate transportation service may be effected; that the highways may be safeguarded from improper or unnecessary usage; that operation by irresponsible persons or any other operation threatening the safety of the public or detrimental to the general welfare be prevented; that congestion of traffic on the highway may be minimized and the public highways may serve the best inter-

est of the general public; all to the end of developing, coordinating, and preserving a state transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the state of Indiana, and of the national defense. All of the provisions of this act [8–2–7–1—8–2–7–51] shall be administered and enforced with a view to carrying out the above declaration of policy." I.C. 8–2–7–5 (Burns Code Ed. 1973) (emphasis supplied).

We believe that the eventual finality of the administrative decisions is indispensible to the interests of fair and impartial regulation. Certainly, public policy demands that at some point in time every proceeding whether administrative or judicial become final and dispositive so that both the parties and the public may rely thereon. While the inherent power of an administrative agency to reopen and reconsider a final decision has been recognized in other jurisdictions, that power has never been deemed interminable. Rather, courts have evinced a concern that such authority be invoked within some reasonable period of time. A reasonable period has been found to be at least co-extensive with the time allowed by the controlling statute for review. See *Lyons v. Delaware Liquor Commission* (1948) 44 Del. 304, 58 A.2d 889; *Board of Education v. Iowa State Board of Public Instruction* (1968) 261 Iowa 1203, 157 N.W.2d 919; *Anchor Casualty Co. v. Bongards Co-operative Creamery Association* (1958) 253 Minn. 101, 91 N.W.2d 122; *Skulski v. Nolan* (1975) 68 N.J. 179, 343 A.2d 721; *State ex rel. Borsuk v. City of Cleveland* (1972) 28 Ohio St.2d 224, 277 N.E.2d 419; *Crews v. Shell Oil Co.* (Okla. 1965) 406 P.2d 482. See also *Lawrence N. Brandt, Inc. v. Montgomery County Commission* (1978) 39 Md.App. 147, 383 A.2d 688. We find our sister states' interpretation of "reasonable time" as co-extensive with the time of review to be both logical and practicable.

Our present provisions for review permit an aggrieved party to petition for rehearing or reconsideration of a Public Service Commission order within twenty days of the issuance of that order, 170 Indiana Administrative Code 1–1–20(c) (1979

Ed.), or, within thirty days of the entry of such decision or order, seek judicial review by the Court of Appeals, I.C. 8–1–3–1 (Burns Code Ed. 1973). We do not deem it inappropriate to utilize the time frame of the present law as a guide to that period beginning February 17, 1956 within which the Commission was entitled to modify its prior order transferring the certificate and authority. It is important to note in this connection that at no time during the 22-year interval did Calcar object to the transfer order nor did it seek timely judicial review of that order. See *Indianapolis & Southern Motor Express, Inc. v. Public Service Commission* (1953) 232 Ind. 377, 112 N.E.2d 864. Accordingly, we hold that the Commission here acted beyond the scope of its authority when it attempted to modify its 22-year-old decision.

Reversed and remanded to the Commission with instructions to reinstate the 1956 transfer certificate.

BUCHANAN, C. J., and SHIELDS, J., concur.