Brian **MOORE**, Appellant,

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION**, Appellee.

No. 7836.

Supreme Court of Alaska.

Sept. 14, 1984.

---

10. $535,523 (Alcan) — $477,498 (Bussell) = $58,025.

11. $488,606 – 477,498 = $11,108.

12. $11,108 – 3,485 = $14,593.

13. $58,025 – 14,593 = $43,432.

C. Michael Hough, Homer, for appellant.

John B. Gaguine and Margot Knuth, Asst. Attys. Gen., Juneau, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

### I

This case arises under the Alaska Limited Entry Act, AS 16.43.010—16.43.990, which created the Commercial Fisheries Entry Commission ("CFEC" or "Commission") to regulate and control entry into commercial fisheries through the use of limited entry permits. The Commission distributes entry permits to those applicants who have the highest point totals. Points are awarded for economic dependence on fishing and past participation in the particular fishery.

Brian Moore filed a timely application for a Peninsula-Aleutians salmon drift gill net limited entry permit in February, 1975. He claimed eligibility for sixteen points. On February 7, 1975, the CFEC sent a "Classification Notice" to Moore informing him that he qualified for all sixteen points claimed. The notice also informed Moore of his right to request an administrative hearing on his point classification. Moore, however, did not request a hearing within the prescribed time period. Since sixteen points were insufficient to qualify, Moore was not awarded a permanent entry permit.

On May 11, 1978, Moore was informed that pursuant to 20 AAC 05.520(d)(1) he could "submit evidence in support of additional point claims" until July 1, 1978. Moore timely submitted evidence in support of a claim for three additional points.

On December 15, 1978, a CFEC hearing officer sent Moore a one sentence letter stating, in its entirety: "I regret to inform you that no further points may be verified based on the additional evidence you have submitted."

Thereafter, Moore requested the CFEC to undertake a "review" of his file;[1] CFEC regulations in effect at that time did not provide for a hearing on the CFEC's refusal to award applicants additional points.[2] On March 19, 1979, the CFEC responded. In a letter to Moore's attorney, it stated: "[O]ur review of the file indicates that the Commission may not undertake the review you have sought. Mr. Moore received a final determination on the new evidence he submitted...."

Moore did not pursue the matter again until 1981, when he renewed his efforts to obtain Commission review of his application. He was informed that his case could only be reopened pursuant to 20 AAC 05.805(d), which required a finding of prior administrative error. On September 10, 1982, Moore sent a letter to the CFEC alleging that administrative error had occurred, since he had been advised in 1975 that a hearing was futile, that he had never been advised of a final decision on his application or of his right to appeal, and that he was entitled to the three additional points he had claimed in 1978.[3] A Commis-

sion hearing officer wrote back on November 23, 1982, to inform Moore that upon review no administrative error had been found; thus, the case would not be reopened.

Moore appealed the November 23, 1982 letter decision to the superior court. The CFEC filed a motion to dismiss the appeal on the ground that it was untimely. Specifically, the CFEC argued that Moore should not be permitted to reopen a stale claim by seeking review for "administrative error" since he had failed to request a hearing earlier.

The superior court ruled that time for appeal of the point classification began to run from the CFEC's letter of March 19, 1979, and had expired. It found that the Commission's refusal to grant relief pursuant to the "administrative error" provision of 20 AAC 05.805(d) was:

in essence a nonappealable decision. Under 20 AAC 05.805(d) the initiative lies with the Commission whether it will correct administrative errors. No right is afforded a party to compel the Commission to make that decision.

Accordingly, the court dismissed the appeal. Moore appeals.

## II

A final determination was made denying Moore's application some three years

1. There is nothing in the record to indicate what precise form this request took or when it was made, but CFEC files indicate that Moore's representative contacted CFEC Commissioner Garner concerning Moore's application in early 1979.

2. 20 AAC 05.520(e). *See Forquer v. State, Commercial Fisheries Entry Comm'n.*, 677 P.2d 1236 (Alaska 1984) (20 AAC 05.520(e) inconsistent with the hearing requirement of AS 16.43.260(c)).

3. The letter from Moore's attorney to the CFEC states in part:

The affidavit of Mr. Moore refers to those portions of the history of this case that I believe establish a basis for a finding of administrative error.

It is Mr. Moore's firm recollection that he initially and very briefly discussed his application in 1975 with a hearing officer, but that after the first contact, all of his significant

contacts were with Commissioner Garner. The statements Mr. Moore clearly remembers Commissioner Garner making explain why a hearing was not requested by the March 24, 1975, deadline. Limited Entry was in its infancy at that time and there did not appear to Mr. Moore that any reason existed to request a hearing, particularly in light of John Garner's statements.

The second basis for administrative error is that Mr. Moore has never been advised of his right to appeal. He really has not even received anything from the Commission indicating it was the final decision of the Commission.

Mr. Moore has also sent forth his contact with the Commission regarding the additional evidence submitted pursuant to the July 1, 1978, evidence extension and, if true, Mr. Miller's affidavit sets forth administrative error since rental money and stock dividends should not have been included in his gross income for purposes of income dependence points.

prior to Moore's 1982 request for review.[4] But Moore is not appealing this earlier determination. He instead focuses on the 1982 Commission action, arguing that the CFEC abused its discretion by refusing to reopen his case at that time.

The Commission contends that its refusal to reopen is a nonappealable decision. We disagree. In reaching its decision, the CFEC conducted what it termed "a thorough review" of Moore's application before it rejected his claims of administrative error on the merits. The November 23, 1982 letter was the conclusion of the CFEC's review of Moore's claims. As such, the letter constitutes a final administrative determination subject to judicial review under Appellate Rule 602(a)(2).[5]

### III

We are next confronted with a need to delineate the extent to which the Commission is empowered to reopen prior administrative determinations.[6] At issue is the proper interpretation of 20 AAC 05.805(d) which provides in pertinent part:

The commission may adjust administrative errors affecting a commission determination, during or after the period for requesting a hearing, upon written notice to the applicant or other party....

The Commission has interpreted this regulation to empower it to review both procedural and substantive potential flaws in prior determinations affecting applicants.[7] Thus, some three years after it had reached a final determination regarding Moore's ap-

plication, the Commission evaluated Moore's claim that in 1978 he had not been properly informed of his right to appeal in addition to his contention that he had not then been awarded all the income dependence points to which he was entitled.

 "An agency's interpretation of a regulation is a question of law.... The appropriate standard of review for questions of law is the 'substitution of judgment test,' providing that the formulation of fundamental policy concerning particularized expertise of administrative personnel is not involved." *Borkowski v. Snowden*, 665 P.2d 22, 27 (Alaska 1983). Since no such particularized expertise is involved on this issue, we will substitute our judgment in interpreting 20 AAC 05.805(d). In determining whether the agency's interpretation is appropriate, a reviewing court may consider whether this interpretation is in accordance with accepted interpretations of similar language and harmonious with other related regulations.

Courts which have considered an agency's ability to reopen prior decisions to correct administrative error after the time has lapsed during which the applicant could appeal the determination have narrowly circumscribed the type of error which can be corrected. In *American Trucking Associations v. Frisco Transportation Co.*, 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958), the United States Supreme Court upheld the Interstate Commerce Commission's reopening of prior proceedings to add a condition to a carrier's certificate which had inadvertently been omitted when the certif-

---

**4.** While the Commission has consistently contended that the final determination was rendered in the one sentence December 15, 1978 letter, Moore was not informed that this letter did in fact constitute a final decision until March 19, 1979. We need not determine which date should control, since Moore does not seek an appeal of this determination with a relaxation of the time requirements under Appellate Rule 521, but instead a review of the 1982 refusal to reopen.

**5.** See *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam), *reversing*, 308 F.2d 347 (9th Cir.1962) (Supreme Court reversed the Ninth Circuit's holding that a refus-

al to reopen a deportation proceeding was not reviewable under 8 U.S.C. § 1105a which provides for "the judicial review of all final orders of deportation"); *see also Paul v. Allender Brown Co.*, 249 S.W.2d 163 (Ky.App.1952) (adverse ruling on worker's compensation claimant's motion to reopen was a final disposition).

**6.** This issue was raised by this court, sua sponte, in an order for further briefing. *See Vest v. First National Bank of Fairbanks*, 659 P.2d 1233, 1234 n. 2 (Alaska 1983).

**7.** In its supplemental briefing in this case, the Commission expressly abandoned this interpretation.

icate was issued four years before. While allowing the correction of the certificate, the court carefully circumscribed the agency's ability to reopen proceedings.

> [T]he power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies. To allow the reopening of proceedings in such a case under the pretext of correction would undercut the obvious purpose [of the Interstate Commerce Act] which makes the issuance of a certificate the final step in the administrative process.

358 U.S. at 146, 79 S.Ct. at 177, 3 L.Ed.2d at 181.[8]

The same approach has been followed in state courts. In *Dale Bland Trucking, Inc. v. Calcar Quarries, Inc.,* 417 N.E.2d 1157 (Ind.App.1981) the Indiana Court of Appeals reversed a Public Service Commission invalidation of a certificate issued twenty-two years earlier. That certificate had contained an itemized list of transportable commodities. The Commission invalidated the old certificate and issued a new one which empowered the certificate holder to transport "those commodities usually and ordinarily hauled by dump trucks." It based its invalidation of the old certificate on a finding that its language was "ambiguous".

The court found the long-delayed reopening was beyond the scope of the Commission's authority. While the court cited *American Trucking* with approval, it noted that in the case before it, the Commission had not determined that a clerical or inadvertent error had been committed. Instead, the Commission was reevaluating the merits of a prior determination after the time for reconsideration had expired. 417 N.E.2d at 1160.[9]

The above discussion illustrates the distinction which courts have drawn between reconsideration of a decision, in which the reasoning behind the result is reevaluated, and correction of administrative error, in which an error in the result is corrected to conform to the agency's initial reasoning. Most courts which have found that an agency may reconsider its decision have held that the agency may reconsider by its own motion only within the time limits that the affected individual could request reconsideration or seek an appeal of the determination.[10] As *American Trucking* makes clear, however, the agency can correct inadvertent ministerial errors long after this period has expired.

A straightforward reading of Commission regulations indicates such a distinction is created. In interpreting the scope of 20 AAC 05.805(d), consideration must be given to 20 AAC 05.850, which deals with the related subject of agency reconsideration.[11] 20 AAC 05.850 provides in part:

**8.** *See also Chlorine Institute, Inc. v. Occupational Safety & Health Admin.,* 613 F.2d 120 (5th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980); *Upjohn Co. v. Pennsylvania Railroad Co.,* 381 F.2d 4 (6th Cir.1967).

**9.** *See also Railroad Comm'n. v. McClain,* 356 S.W.2d 330 (Tex.Civ.App.1962) (Railroad Commission had no power to alter prior unrestricted authority to carrier after order became final in absence of proof that restriction had been omitted through error).

**10.** *See, e.g., Lasky v. Commissioner of Internal Revenue,* 235 F.2d 97 (9th Cir.1956), *aff'd,* 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957); *Suryan v. Alaska Industrial Bd.,* 12 Alaska 571 (Alaska 1950); *American Smelting & Refining Co. v. Arizona Air Pollution Control Hearing Bd.,* 113 Ariz. 243, 550 P.2d 621, 622 (1976); *Andreatta v. Kuhlman,* 43 Colo.App. 200, 600 P.2d 119,

120 (1979); *Board of Education v. Iowa State Board of Public Instruction,* 261 Iowa 1203, 157 N.W.2d 919, 923 (1968); *Silverco, Inc. v. Zoning Board of Adjustment,* 379 Pa. 497, 109 A.2d 147, 150 (1954); *Atlantic Greyhound Corp. v. Public Service Comm'n,* 132 W.Va. 650, 54 S.E.2d 169, 175 (1949). *But see Anchor Casualty Co. v. Bongards Co-operative Creamery Ass'n.,* 253 Minn. 101, 91 N.W.2d 122 (1958).

**11.** In his supplemental brief Moore argues that 20 AAC 05.850 does not apply since the earlier decision was signed by a hearing officer with the recital "By Direction of the Commercial Fisheries Entry Commission" instead of by the Commissioners themselves. This argument is without merit. Under the Commission regulations, the hearing officer was specifically delegated such authority. *See* 20 AAC 05.900(c). Nor is such delegation precluded by the Limited Entry Act. *See* AS 16.43.120(a), 16.43.110(b);

(a) The commissioners may order a reconsideration of their decision on their own motion or on petition of the applicant or other party. A petition for reconsideration by the applicant or other party shall set forth specifically the grounds upon which the petitioner believes the decision to be erroneous or specify new evidence he believes will have a substantial bearing on the decision.

(b) *The power to order a reconsideration expires 30 days after the hand delivery or mailing of a decision* to the applicant or other party....

....

(d) The commissioners will, in their discretion, reconsider any final action by a hearing officer on petition of the applicant or other party. The petition for reconsideration shall specifically set forth the alleged error committed by the hearing officer.

(Emphasis added).

 The Commission has interpreted the "administrative error" provision of 20 AAC 05.805(d) to allow it to fully evaluate the merits of reopening a determination it made nearly three years previously. This interpretation is erroneous. A reevaluation of the merits of an adjudicatory decision by the same agency is a "reconsideration."[12] Under 20 AAC 05.850 "the [Commission's] power to order a reconsideration expires 30 days after the hand delivery or mailing of a decision to the applicant." The correction of administrative errors cannot be construed to allow an adjudicatory reopening of a Commission decision after the time limit for reconsideration has expired in the absence of a finding of inadvertent mistake or other special circumstances.[13]

In the instant case, Moore initially sought to exclude rental money and stock dividends from his gross income. The Commission's 1978 decision was to include such amounts in gross income. In 1982, Moore was not challenging the mathematical calculations of this prior Commission decision—he was challenging the propriety of the Commission's formula. As the Commission itself states, "No matter what the appellation, Moore was asking the CFEC to look again at the evidence which he had submitted in 1978.... In other words, he was asking the CFEC to 'change its position' from that expressed in 1978."

The superior court found that the Commission's November 23, 1982 decision not to consider Moore's request to correct alleged administrative error was "in essence a non-appealable decision." Accordingly, it granted the CFEC's motion to strike the notice of appeal and dismiss the action. Thus, it refused to reach the underlying merits of Moore's claims. By different reasoning, we reach the same result. We hold that the Commission regulations did not authorize reconsideration of Moore's application in 1982; hence, such action is void and the end result—denial of Moore's permit application—remains appropriate.

AFFIRMED.

---

*Alaska Transportation Comm'n. v. Gandia,* 602 P.2d 402, 405 (Alaska 1979).

**12.** *See Union Oil Co. of California v. State, Dept. of Natural Resources,* 526 P.2d 1357, 1363 n. 9

(Alaska 1974); 2 Am.Jur.2d *Administrative Law* §§ 521, 522 (2d Ed.1962).

**13.** This appeal does not require us to decide what these special circumstances may be.